A01A0880, A01A0881. CRAFT v. THE STATE (two cases).
(558 SE2d 18)

MIKELL, Judge.

After a bench trial, Dr. Robert Bruce Craft was convicted of 102 counts of sexual exploitation of a minor[1] and 15 counts of child molestation.[2] On appeal, Craft urges that we reverse either his convictions or, in the alternative, the denial of his amended motion for a new trial, arguing the following: (1) the verdicts on Counts 1 through 45 of the Richmond County indictment and Counts 1 through 70 of the Columbia County indictment are contrary to the evidence; (2) the photographic and videotaped evidence was not properly authenticated and its admission violated his constitutional rights; (3) the verdict is contrary to the evidence because the state failed to prove that

---

[4] (Punctuation and footnote omitted.) *Brinson v. State,* 245 Ga. App. 411, 413 (2) (537 SE2d 795) (2000).
 [1] Seventy-five of the 102 counts pertained to violations of OCGA § 16-12-100 (b) (5), twenty-four to violations of OCGA § 16-12-100 (b) (7), and three to violations of OCGA § 16-12-100 (b) (8).
 [2] OCGA § 16-6-4.

the testimony or photographs of F. R., a minor child, violated OCGA § 16-6-4 in Counts 34, 35, 37 through 40, 42, and 71 through 73 of the Columbia County indictment or that the photographs of D. S., a minor child, violated OCGA § 16-6-4 in Counts 14 through 18 of the Columbia County indictment; (4) the trial court erred in denying his motion to suppress all of the evidence; (5) the trial court erred when it denied his motion to examine and test evidence; and (6) the trial court failed to make the required findings of fact in regard to its denial of his motion for an appeal bond. For the reasons stated below, we affirm in part and reverse in part.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[3]

So viewed, the evidence shows that in June 1996, Federal Bureau of Investigation Special Agent Keith Owens was contacted by the FBI's Charlotte division to determine whether Craft, who had had photographs developed at Fort Gordon, was a real person. Owens testified that he was given copies of 37 photos of a small boy lying on a sofa, most of which showed the boy cutting or stabbing at his erect penis with what appeared to be a knife. There was an adult in one of the photos with the small child. Owens learned that Craft, a child psychologist, was the adult in the photograph.

On September 20, 1996, Owens visited Craft's co-worker, Dr. John McCormack, and showed him several of the pictures. When asked if there could be a reason that such photos had been taken, McCormack said that he did not know of any, but hoped that there was an explanation. With McCormack's assistance, Owens decided when to approach Craft at his office to interview him. Owens met with Craft in Craft's office in Richmond County on October 1, 1996, and informed Craft that he needed to talk with him about some possible violations of laws governing sexual abuse. Owens also told Craft that he was not under arrest, would not be arrested at the conclusion of the interview regardless of what he said, and that he could ask Owens to leave at any time.

Owens showed Craft one of the pictures he had received from Charlotte. Craft identified the minor child in the photograph as C. G. and admitted that he had taken the photo in his office. Owens noticed a distinctive sofa and pillow in Craft's office that had

---

[3] (Citations and punctuation omitted.) *Jones v. State*, 234 Ga. App. 571 (1) (507 SE2d 804) (1998).

appeared in most of the 37 photographs.[4] When Owens showed Craft the remaining pictures of C. G., Craft explained that "he took the pictures because he was amused and he was trying to understand why C. G. was doing what he was doing." Craft said that he had become very involved with photography over the previous five years, always had his camera nearby, and regularly took pictures of his child patients. Owens testified:

> He said that he had never taken nude or sexual pictures of other children except when occasionally a child would be hamming, as he called it, during a picture and pull his pants down. He denied ever having these children pose for the photographs and he denied that he'd ever touched them sexually or had them touch him sexually. He said that these were the most explicit photographs he'd ever taken of children. He advised that the original slides of these photographs of C. G. playing with the knife were at his home and any other photographs that he'd taken of children exposing their genitals and buttocks were at his home. He said he didn't take these pictures for any training purposes or for any professional study. He said he didn't want these photos to get out and they never did, and this was in reaction to — I asked him about if he'd put them on the Internet or shared them with friends, that type of thing. He said he — they never got out. He never wanted them to get out and they never did. He described the spontaneous photographs of children exposing themselves as cute and stated he found it intriguing what these children do. . . . He said he never did get any sexual gratification from these photographs. He said that he had never masturbated while looking at these pictures. I asked him why would he take these pictures of other people's children with the genitals exposed and not share those with the family of these other children. He became a little bit defensive and stated two or three times that he could probably make a clinical argument for taking the pictures. He said — he admitted that a part of him said maybe he shouldn't do it and he knew they were inappropriate. He also mentioned that his colleagues would never understand. In the case of C. G., Dr. Craft described his interest in taking

---

[4] All but two of these exhibits are photographs of C. G. at various angles exposing his erect penis and a toy knife. In the two where his penis is not clearly exposed, he is jabbing at his pubic area with the toy knife. Exhibits 1 through 1W were incorporated by reference into Counts 1 through 24 of the Richmond County indictment.

the pictures as morbid fascination with what C. G. was doing with the knife.

After the interview, Owens discussed the case with an Assistant United States Attorney, and they decided to investigate further. Consequently, they obtained search warrants over the weekend so that Craft would not have time to destroy the pictures. All of the warrants instructed the agents to search for:

Any and all photographs or visual depictions of any kind, including computer generated matter of minors engaged in sexually explicit conduct; books; magazines; periodicals; films; videotapes; or other matter which contained any visual depiction of a minor engaged in sexually explicit conduct; receipts; canceled checks; money orders; and order forms which are evident of interstate transportation or mailings of film, books, magazines, periodical [sic], videotapes, or other matter which contains any visual depiction of a minor engaged in sexually explicit conduct; any records of treatment pertaining to C. G.; any undeveloped film which may contain visual depictions of a minor engaged in sexually explicit conduct; the toy knife depicted in photographs of C. G. reflected in attachment B; any diaries or writings describing any sexually explicit conduct by or with a minor.

Owens executed search warrants on Craft's two offices, both in Richmond County, on October 4, 1996. No evidence was taken from his office at the Veterans Administration hospital. At the office where Owens interviewed Craft, the agents seized message notes pertaining to C. G. but could not locate C. G.'s file. They also seized the toy knife and took photographs of that office.

Special Agent Harold Harrison, who executed the search warrant on Craft's residence in Columbia County on that same day, testified that his search team confiscated twenty-seven boxes of evidence, the bulk of which was taken from two rooms, a computer room and a room containing a sofa and a projection screen. The boxes were taken to a secure room at the FBI office in Augusta and were turned over to Owens the next morning. There were approximately 37,000 photographs and slides in the boxes. Owens looked at every photograph and slide. Agent Harrison informed Owens that the team saw, but did not seize, several videotapes from Craft's house because they had seized so many photographs.

On October 21, Owens interviewed Jamie and Judy Rumbaugh, whose six children were patients of Craft's and with whom C. G. lived while initially under Craft's care. Owens showed the Rumbaughs

approximately 350 photographs and slides of their children nude or partially nude. The Rumbaughs told Owens that Craft often had both his still camera and videocamera at his office. Consequently, Owens added the information about the videocamera to the original affidavit for the search warrant and obtained another search warrant to seize the videotapes.

The second warrant authorized a search for "any and all home-made videotapes which may reasonably contain visual depictions of minors engaging in sexually explicit conduct; [and] any and all commercially made videotapes which contain visual depictions of minors engaged in sexually explicit conduct." The videotapes were seized from Craft's home on October 24, 1996.

After cataloging the evidence he thought was incriminating, Owens obtained a subpoena to find out the identities of some of the children in the photographs. Pursuant thereto, Craft gave Owens their names, addresses, and telephone numbers. Owens contacted the Department of Family & Children Services (the "Department") and learned that it had referred 18 children to Craft. When he asked the Department for assistance with interviewing the children, he was referred to Investigator John Durden from the Georgia Bureau of Investigation.

Owens showed the pictures to Durden on March 5, 1998. After Durden discussed the case with the district attorney and a decision was made to prosecute the case at the state level, the GBI took possession of the photographs. Durden obtained arrest warrants from both Columbia and Richmond Counties and search warrants for Craft's office and residence. He arrested Craft and searched Craft's residence on March 9, 1998, while another officer searched Craft's office.

Craft was indicted in Richmond County on forty-five counts of sexual exploitation of a minor in violation of OCGA § 16-12-100 (b) (5) and one count of child molestation against F. R. He was convicted of each count of sexual exploitation, and the state withdrew the molestation charge. In Columbia County, Craft was indicted on thirty-one counts of sexual exploitation of a minor, in violation of OCGA § 16-12-100 (b) (5), twenty-four counts of sexual exploitation of a minor, in violation of OCGA § 16-12-100 (b) (7), three counts of sexual exploitation of a minor, in violation of OCGA § 16-12-100 (b) (8), and fifteen counts of child molestation. He was convicted of each count, with the exception of one OCGA § 16-12-100 (b) (5) count. Craft agreed to waive the issue of venue with regard to the Columbia County indictment and to try both cases in Richmond County.

1. In his first enumeration of error, Craft argues that the verdict is contrary to the evidence because the state did not prove that the photographs attached as exhibits to Counts 1 through 45 of the Rich-

mond County indictment and as exhibits to Counts 1 through 70 of the Columbia County indictment violated OCGA § 16-12-100 or § 16-6-4. When the sufficiency of the evidence is challenged, we use the test established in *Jackson v. Virginia*[5] to determine whether the evidence was sufficient for any rational trier of fact to find the defendant guilty of the crimes charged.

The indictments alleged violations of several sections of OCGA § 16-12-100, which provide, in relevant part:

> (b) (5) It is unlawful for any person knowingly to create, reproduce, publish, promote, sell, distribute, give, exhibit, or possess with intent to sell or distribute any visual medium which depicts a minor engaged in any sexually explicit conduct[;] . . . [(b)] (7) It is unlawful for any person knowingly to bring or cause to be brought into this state any material which depicts a minor engaged in any sexually explicit conduct[; (b)] (8) It is unlawful for any person knowingly to possess or control any material which depicts a minor engaged in any sexually explicit conduct.

OCGA § 16-12-100 (a) (4) defines "sexually explicit conduct," in relevant part, as actual or simulated "(C) [m]asturbation; (D) [l]ewd exhibition of the genitals or pubic area of any person; (H) [d]efecation or urination for the purpose of sexual stimulation of the viewer."

Craft first argues that the state failed to prove that the photographs depicted a minor engaged in the "lewd exhibition of genitals." Because "lewd exhibition of genitals" has not been defined in Georgia, Craft contends that the trial court should have examined the six factors set forth in *United States v. Dost*[6] to determine whether the photographs were lewd.[7] We disagree. *Dost* interprets California law and thus is not controlling authority. Though the term has not been defined in Georgia, in *Unden v. State*,[8] we held, "[u]nless an act is found not to be lewd as a matter of law, whether such act is lewd

---

[5] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[6] 636 FSupp. 828 (S.D. Cal. 1986).

[7] The *Dost* factors are: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. Id. at 832.

[8] 218 Ga. App. 463 (462 SE2d 408) (1995) (appellant asserted as error the trial court's failure to charge the jury on the *Dost* factors and we stated that we were not deciding "whether a *Dost* factor charge is either appropriate or indispensable in sexual exploitation cases arising from an averred violation of Georgia law"). Id. at 466 (5).

under the attendant circumstances usually 'is best left to a jury for determination.' "[9] In this case, there was a bench trial. When the trial court sits as the trier of fact, "its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them."[10]

(a) *Richmond County indictment*. The Richmond County indictment charges 45 violations of OCGA § 16-12-100 (b) (5). In each count, with the exception of 23 and 24, Craft is charged specifically with creating "a photograph, depicting a minor child engaged in sexually explicit conduct, to wit: a lewd exhibition of genitals." We affirm Counts 1 through 22, 30 through 35, 40, and 41. However, we reverse the convictions on Counts 23 through 29, 36 through 39, and 42 through 45 because the evidence is insufficient to support these convictions.

The exhibits attached to Counts 1 through 22 were among the 37 photographs that Owens initially showed Craft during their interview. As Craft informed Owens, these photographs depicted C. G. as he played with his penis or with his penis and a rubber knife. The exhibits attached to Counts 30 through 35 display a different minor, who has lowered his pants to show his penis. In the exhibits attached to Counts 40 and 41, a minor female child is shown nude and in the process of taking off her clothes. Owens testified that the couch and a pillow in the photographs were in Craft's office when he interviewed him. We find that there is evidence sufficient to support Craft's convictions on these counts.

In Counts 23 and 24, the indictment charges Craft with creating a photograph depicting a minor child engaged in masturbation with a toy knife. In both photographs, the child's penis is not shown. In the first picture, he is pointing the knife at his penis through his shorts, and in the other photo, he appears to be cutting at his penis with the knife. We find the evidence insufficient to support the convictions on these counts as there is no evidence that the child was simulating or actually engaging in masturbation.

The exhibits attached to Counts 25 through 29, 36 through 39, and 42 through 45 are photographs of minor children who are wearing short pants and sitting down with their legs open. Due to the angle of the photograph, each child's genitals are partially or completely observable. However, the child is either innocently playing with something or just sitting, not engaging in the lewd exhibition of his or her genitals. The photographs evidence conduct by the defendant that was despicable and perverted, i.e., surreptitiously photo-

---

[9] Id. at 464 (2).

[10] (Citations and punctuation omitted.) *Turner v. State*, 233 Ga. App. 413 (504 SE2d 229) (1998).

graphing the genitals of children. However, the conduct is not within the precise language of the statute, and the evidence is hence insufficient on those counts.

(b) *Columbia County indictment.* Craft was convicted of violating OCGA § 16-12-100 (b) (5) in Counts 1 through 13, 19 through 33, 41, and 67; OCGA § 16-12-100 (b) (7) in Counts 43 through 63 and 68 through 70; OCGA § 16-12-100 (b) (8) in Counts 64 through 66; and OCGA § 16-6-4 in Counts 14 through 18, 34, 35, 37 through 40, and 42. We affirm Craft's convictions on Counts 33; 44 through 46, 53, and 68; and 14 through 18, 34, 35, 37 through 40, and 42. We reverse his convictions on Counts 1 through 13, 19 through 32, 41, and 67; 43, 47 through 52, 54 through 63, 69, and 70; and 64 through 66.

In all but two of the counts charging violations of OCGA § 16-12-100 (b) (5), Craft was indicted for creating a visual medium that depicted a minor child engaged in sexually explicit conduct, specifically "lewd exhibition of genitals." We reverse Craft's convictions on Counts 1 through 12, 19 through 32, 41 and 67, finding that as a matter of law, the photographs and videotape (Count 67) did not depict minors engaged in any sexually explicit conduct. Count 13 charges that Craft created a photograph of a child masturbating. The photograph depicts a minor child sitting with his legs open with his hands on either side of his underwear. The evidence is insufficient to support this conviction.

We affirm the conviction as to Count 33. In the exhibit attached to Count 33, F. R., the only child to testify at the trial, is sitting on a toilet. When asked what he was doing in the picture, F. R. said that he was using the restroom. As utilized in OCGA § 16-12-100, sexually explicit conduct includes "[d]efecation or urination for the purpose of sexual stimulation of the viewer."[11] Viewing the evidence in the light most favorable to the trial court's verdict, any rational trier of fact could have found the evidence sufficient to support this conviction.[12]

As stated earlier, OCGA § 16-12-100 (b) (7) provides that "[i]t is unlawful for any person knowingly to bring or cause to be brought into this state any material which depicts a minor engaged in any sexually explicit conduct." The sexually explicit conduct referenced in Counts 43, 47 through 63, and 68 through 70 is "lewd exhibition of genitals." The exhibits attached to Counts 43 and 54 depict sleeping minor children, whose genitals are partially exposed. We reverse Craft's conviction on these counts. The exhibits attached to Counts 47 through 52 and 55 through 63 depict children playing outside in a

---

[11] OCGA § 16-12-100 (a) (4) (H).
[12] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

woody area in various stages of nudity. Owens testified that these photographs were marked "Smokey Mountains." Because the photographs display children before or after swimming, there is no evidence to support the trial court's finding that their nudity constituted a lewd exhibition of their genitals. Likewise, there is no evidence to support the trial court's finding that the photographs referenced in Counts 69 and 70 of a partially nude minor child as he climbed a wall depicted a lewd exhibition of the genitals. Thus, Craft's convictions for these counts are also reversed.

As to Count 53, however, the evidence shows a minor child with his underpants pulled down, pointing to his penis. A rational trier of fact could infer that the child was lewdly exhibiting his genitals, and hence the evidence was sufficient to support that count.

The exhibits serving as the basis for Counts 44 through 46 depict minor boys who are urinating from a back and side angle. In the videotape that served as the basis for Count 68, the minor child is urinating outside and, once he notices the camera, continues to urinate and smiles directly into the camera. Urinating is defined as a type of sexually explicit conduct. "Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this."[13] Thus, the trier of fact could have inferred that Craft created these photographs for his own sexual gratification. Accordingly, we find the evidence sufficient to sustain a guilty verdict on these counts.

In Counts 64 through 66, Craft was charged with violations of OCGA § 16-12-100 (b) (8), which makes it unlawful to knowingly possess or control material depicting a minor engaged in any sexually explicit conduct. Investigator Durden testified that he seized the photographs attached to Counts 64 through 66 during his search of the Craft residence. These photographs depict a young boy who is sitting with his legs open and wearing swimming trunks. His genitals are partially exposed, apparently by accident, through the leg of his shorts. A rational trier of fact could not infer that the photographs depict a minor intentionally engaged in the lewd exhibition of his genitals. Therefore, we reverse Craft's convictions on these counts.

In Counts 14 through 18, 34, 35, 37 through 40, and 42, Craft is charged with violating OCGA § 16-6-4 (a), which provides, "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sex-

---

[13] (Citations and punctuation omitted.) Ney v. State, 227 Ga. App. 496, 497 (1) (489 SE2d 509) (1997).

ual desires of either the child or the person."[14] In Counts 14 through 18, 34, 35, 37 through 40, the indecent or immoral act with which Craft is charged is photographing children while they were nude, for the purpose of satisfying his sexual desires. In Count 42, Craft is charged with committing the indecent act of photographing a child while the child was pulling down his pants and exposing and slapping his buttocks for the camera, for the purpose of satisfying Craft's sexual desires.

As stated earlier, intent can be inferred.[15]

> A reviewing court will not disturb a factual determination by the jury on intent unless it is contrary to the evidence and clearly erroneous. The intent with which an act is done is peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground.[16]

Also, in child molestation cases, evidence of other similar offenses against children is admissible to show the lustful disposition of the defendant.[17] In this case, hundreds of photographs of nude or partially nude children or their genitalia were admitted into evidence. From this evidence, the trier of fact could infer that Craft took the photographs for the purpose of satisfying his sexual desires. Thus, we affirm the convictions on these counts.

2. In his second enumeration of error, Craft argues that the trial court erred by admitting all of the photographic and videotaped evidence because it was not properly authenticated under OCGA § 24-4-48. We disagree.

"The admission of evidence lies within the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion."[18] OCGA § 24-4-48, which addresses the admissibility of photographs and videotapes, provides, in relevant part, "For purposes of this Code section, 'unavailability of a witness' includes situations in which the authenticating witness [i]s exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the authentication."[19] Thus, under OCGA § 24-4-48, Craft is

---

[14] Counts 71 through 73 of the Columbia County indictment also allege violations of OCGA § 16-6-4, but Craft's first enumeration of error does not contest those counts.

[15] *Ney*, supra.

[16] (Citations and punctuation omitted.) Id. at 497-498 (1).

[17] *Baker v. State*, 241 Ga. App. 666, 669 (2) (527 SE2d 266) (1999).

[18] (Citation omitted.) *Williams v. State*, 272 Ga. 828, 829 (3) (537 SE2d 39) (2000).

[19] OCGA § 24-4-48 (a) (1).

deemed unavailable as an authenticating witness because he cannot be compelled to testify due to his constitutional right against self-incrimination. However, the statute also provides that even though the authenticating witness is unavailable, subject to any other valid objection, photographs and videotapes are admissible when the court determines, based on competent evidence presented to it, that the items tend to show reliably the fact or facts for which they are offered.[20]

Through Owens', Harrison's, and Durden's testimony, the state introduced hundreds of exhibits. In each instance, the officers testified that they seized the evidence from one of Craft's offices or his home and were able to verify that the exhibits depicted Craft's office or home. Moreover, Craft admitted to Owens that he regularly took pictures of his child patients.

As the trier of fact, the trial judge is allowed to infer other related or connected facts from the direct evidence that it finds are reasonable and justified in the light of its experience.[21] Accordingly, we find that the trial court's decision to admit the evidence based upon its inference from the officers' testimony that Craft took the photographs and videotapes was not an abuse of its discretion.

3. In his third enumeration of error, Craft argues that the verdict is contrary to the evidence because the testimony and photographs of F. R. are insufficient to prove that Craft violated OCGA § 16-6-4 in Counts 34, 35, 37 through 40, 42, and 71 through 73 of the Columbia County indictment and that the photographs of D. S. are insufficient to prove that Craft violated OCGA § 16-6-4 in Counts 14 through 18 of the Columbia County indictment. As we have affirmed Counts 14 through 18, 34, 35, 37 through 40, and 42 in Division 1 of this opinion, we need not address these counts again here. As to Counts 71 through 73, we affirm.

In Count 71, Craft is charged with knowingly committing the indecent act of showing to F. R. a videotape portraying men and women engaged in sexual activity for the purpose of arousing Craft's or F. R.'s sexual desires. F. R. testified that he and Craft regularly watched videos at Craft's house and that on one occasion, they watched a video of adults engaging in sexual activity. As discussed earlier in Division 1 (b), whether Craft had the requisite intent is a question of fact for jury determination, and the trier of fact's finding will not be set aside unless it is clearly erroneous.[22] The evidence was sufficient to support the trial judge's finding that on Count 71, Craft was guilty of violating OCGA § 16-6-4.

---

[20] OCGA § 24-4-48 (b).

[21] See generally *McGarity v. State*, 212 Ga. App. 17, 20 (3) (440 SE2d 695) (1994).

[22] *Ney*, supra at 498 (1).

Craft is charged with fondling F. R.'s penis while bathing F. R. in the shower in Count 72 of the Columbia County indictment. F. R. testified that Craft was always with him in the bathroom when he took baths. Craft would wash F. R. with his hands, instead of a washcloth. When F. R. was asked what parts of his body Craft would wash, F. R. replied, "mainly my penis and my buttocks and probably my back." Any rational trier of fact could have found the evidence sufficient to support Craft's conviction on Count 72.

In Count 73, Craft is charged with committing the indecent act of asking F. R. to masturbate for him while in Craft's home. F. R. testified that Craft videotaped or took pictures of him while F. R. showed him what he did to masturbate. When cross-examined about whether Craft asked him to masturbate, F. R. testified that he was sure that Craft asked to watch F. R. masturbate after F. R. described how he did it. Accordingly, the evidence was sufficient to convict Craft on Count 73.

4. Next, Craft enumerates as error the trial court's denial of his motion to suppress all of the videotaped, photographic, and other evidence, arguing that all three searches of his home and both searches of his offices were not justified by probable cause. On appeal from a trial court's ruling on a motion to suppress, if "the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review."[23]

Craft argues, citing no authority, that the first search warrants were not supported by probable cause because Owens should have done further independent investigation before seeking the warrants. Owens initially applied for search warrants to search Craft's two offices and his home on October 4, 1996. In his application for the warrants, Owens explained how he first came into possession of the 37 photographs. He also averred that Craft admitted that he had taken those photographs as well as photographs of other children exposing their genitals. Further, Craft stated that he kept the photographs and slides of the children at his home and that he had documented at least one child's behavior in his treatment files. Owens stated that he believed that Craft kept photographs of children at his home and two offices. Owens attached pictures to the affidavit and listed the items to be seized during the search. The magistrate issued the warrants and thousands of photographs and slides were seized.

"A search warrant must be supported by probable cause, or reasonable grounds, to believe that evidence of a crime will be found in a

---

[23] (Citation omitted.) *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000).

particular place."[24] Our duty in reviewing the magistrate's decision to issue a search warrant is to determine if the magistrate had a substantial basis for concluding that probable cause existed and to give substantial deference to the magistrate's finding.[25] Here, the magistrate had a substantial basis for concluding that probable cause existed. Accordingly, the trial court's denial of Craft's motion to suppress the evidence gathered as a result of the first searches was proper.

On October 23, 1996, Owens sought a second warrant to search Craft's home for all homemade or commercially made videotapes depicting minors engaged in sexually explicit conduct. The supporting affidavit recited the same facts as the previous affidavit. In addition, it stated that Owens interviewed the parents of minor children who appeared nude or partially nude in several of the photographs and/or slides that had been seized and learned from them that Craft had also made videotapes of their children on many occasions. Craft argues that because the videotapes could have been seized pursuant to the first search warrant, there was no new probable cause to justify a second search. We disagree and find that the additional information provided in the supporting affidavit for the second search warrant provided a substantial basis for the magistrate to conclude that probable cause existed.

Finally, Craft contends that the third search of his home and second search of his office, both of which occurred on March 9, 1998, were not justified by probable cause because the evidence relied upon to obtain warrants for those searches was stale. In order to determine if the information relied upon in obtaining a search warrant is stale, we must "view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant."[26]

GBI Investigator Durden provided the supporting affidavits for the searches in question. In his affidavits, Durden averred that on March 5, 1998, Owens showed him 500 to 700 pictures and told him that Craft admitted to taking photographs of children at his office, residence, and on camping trips. Owens also told him that one of Craft's neighbors saw him photographing a neighborhood child after the search warrants on his residence had been executed. For this reason, Owens told Durden that he believed that Craft continued to photograph children in his office in a sexually explicit manner and that

---

[24] (Footnote omitted.) *State v. Staley*, 249 Ga. App. 207, 209 (548 SE2d 26) (2001).

[25] *State v. Henderson*, 271 Ga. 264, 269 (4) (517 SE2d 61) (1999).

[26] (Punctuation and footnote omitted.) *Carruthers v. State*, 272 Ga. 306, 313 (5) (528 SE2d 217) (2000).

Craft continued to treat some of the children depicted in the photographs and videotapes that had already been seized. Based on his training and experience as a child abuse specialist and on his interviews of child molesters ·and pedophiles, Durden averred that pedophiles and other individuals who prey upon children for their own sexual gratification rarely destroy the material that they collect. Further, Durden believed that items seized during a search would help the investigators to determine Craft's previous and current victims. After reviewing the totality of the circumstances, we find that the magistrate had sufficient evidence to conclude that there was a reasonable probability that the items to be seized remained in existence.

5. In his fifth enumeration of error, Craft argues that the trial court's denial of his motion to examine and test evidence violated his Fifth, Sixth, and Fourteenth Amendment rights as well as analogous provisions of the Georgia Constitution. We disagree. Citing no authority in support of his argument, Craft contends that his inability to review all of the photographs with his counsel prevented him from presenting a defense. Consequently, he maintains that the trial court saw only a very small number of the seized photographs and videotapes.

"Our appellate courts have repeatedly affirmed that a trial court is vested with latitude to handle within its sound discretion pre-trial matters . . . [such as] motions for discovery."[27] Craft was represented by counsel in this matter, whose effectiveness he has not challenged, and who were authorized to act on his behalf. There is no allegation that Craft's counsel were not allowed to inspect all of the evidence, just that Craft was not with them when they inspected it. Craft does not have the right to represent himself and simultaneously be represented by counsel.[28]

Craft argues that his constitutional rights were violated because the court could not place the evidence in the proper perspective since it saw only the photographs the state chose to offer into evidence. The court is not constrained to view as a whole evidence pertaining to the sexual portrayals of children.[29] Thus, this enumeration lacks merit.

. 6. In Craft's seventh enumeration of error, he argues that the trial court erred by failing to make the required findings of fact in

---

[27] (Citations and punctuation omitted.) *State v. Tuzman*, 145 Ga. App. 481, 483 (2) (243 SE2d 675) (1978).

[28] *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986).

[29] *New York v. Ferber*, 458 U. S. 747, 764 (II) (C) (102 SC 3348, 73 LE2d 1113) (1982); but see *Miller v. California*, 413 U. S. 15, 24 (II) (93 SC 2607, 37 LE2d 419) (1973) (state statutes regulating adult pornography must be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value).

connection with his appeal bond. We disagree.

"Granting or refusing to grant bail in non-capital felony cases after indictment and conviction is a matter within the sound discretion of the trial court; this Court will not control that discretion unless it has been flagrantly abused."[30]

> In exercising its discretion, the trial court must answer four questions: (1) whether there is a substantial risk the defendant will flee; (2) whether there is a substantial risk the defendant will pose a danger to others in the community; (3) whether there is a substantial risk the defendant will intimidate witnesses or otherwise interfere with the administration of justice; and (4) whether it appears the appeal is frivolous or taken only for the purpose of delay.[31]

In this case, the trial judge stated in an earlier bond proceeding that "I am of the opinion that the Defendant poses a danger to the community." After hearing counsel's argument on the motion for an appeal bond, the trial judge referenced the court's earlier denial of Craft's request for bond and stated that the only thing that had changed was the plethora of evidence against Craft that the court had considered during the trial. The trial court ruled that even after considering the four factors, it was not appropriate to grant an appeal bond. An affirmative answer to any one of the four questions will support the denial of the bond.[32] Because the trial judge incorporated in the second bond proceeding his earlier finding that Craft posed a threat to the community, we affirm the trial court's denial of Craft's appeal bond.

7. As to Craft's sixth enumerated error, we addressed the issues raised therein in Divisions 2, 4, and 5 of this opinion.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 9, 2001 —
RECONSIDERATION DENIED DECEMBER 10, 2001 — 

*William C. Davison, Christopher J. McFadden,* for appellant.

---

[30] (Citation omitted.) *Williams v. State,* 228 Ga. App. 289, 290 (2) (491 SE2d 500) (1997).
[31] (Footnote omitted.) *Abernathy v. State,* 245 Ga. App. 857-858 (539 SE2d 203) (2000).
[32] Id.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.