## A11A2147. COOK v. THE STATE.
### (723 SE2d 709)

MIKELL, Presiding Judge.

After a bench trial, James Cook was found guilty of hijacking a motor vehicle, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. He appeals from the denial of his motion for a new trial,[1] asserting on general grounds that the "verdict was contrary to the evidence and without evidence to support it." For the following reasons, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the verdict, and the presumption of innocence no longer applies; further, an appellate court does not weigh the evidence or judge witness credibility, but rather determines whether the adjudication of guilt is supported by sufficient competent evidence.[2] "When the sufficiency of the evidence is challenged, we use the test established by *Jackson v. Virginia*[3] to determine whether the evidence was sufficient for any rational trier of fact to find the defendant guilty of the crimes charged."[4] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld."[5] "In bench trials, the findings of the trial court will not be set aside unless clearly erroneous."[6]

---

[1] Cook's motion for a new trial was untimely filed; however, because the trial judge considered and decided this motion on the merits, constituting an implicit grant of permission to file an out-of-time motion for a new trial, we have jurisdiction. See *Washington v. State*, 276 Ga. 655, 656 (1) (581 SE2d 518) (2003).

[2] *Stone v. State*, 257 Ga. App. 492 (571 SE2d 488) (2002).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Craft v. State*, 252 Ga. App. 834, 839 (1) (558 SE2d 18) (2001).

[5] (Citation omitted.) *Jackson v. State*, 281 Ga. App. 506, 507 (636 SE2d 694) (2006).

[6] (Citation and punctuation omitted.) *Stone*, supra.

So viewed, the evidence shows that on July 17, 2002, Cook called his father, James Smith, and asked him to come to his house and for help in obtaining marijuana for his companions. Smith, who has a history of possessing and selling marijuana, said he did not have any, so Cook then asked Smith to drive him and two companions to get their car. Smith drove the car, with Cook and one man in the back seat, and the other man in the front passenger seat. As Smith began to drive, the front-seat passenger pulled out a gun and said, "You know what it is." Smith believed he was being robbed, but refused to pull over. The front-seat passenger then shot Smith in the leg. Smith steered into the right emergency lane, and the front-seat passenger pushed Smith out of the car and onto the highway near oncoming traffic. During the incident, Cook did not say or do anything to intervene. The front-seat passenger got in the driver's seat and drove up the road a short distance. Cook then got out of the car, walked back and looked at Smith lying on the ground, but returned to the car without rendering aid.

The trial court found Cook guilty of the crimes of armed robbery, possession of a firearm during the commission of a felony, hijacking a motor vehicle, and aggravated assault.

Cook appeals, enumerating as his sole error that the verdict is contrary to the evidence and without evidence to support it. Cook first argues that the evidence does not establish that he was a party to the crime or a conspirator, and shows only that he was "merely present" during the commission of the crimes. We disagree.

OCGA § 16-2-20 (a), (b) (3), (4) provides:

> Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. . . . A person is concerned in the commission of a crime only if he . . . [i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.

To the extent that Cook argues that he was not a conspirator, we note that this court has held that "[w]hile this Code section does not use the word 'conspiracy' it is plain that it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto."[7]

A person who did not directly commit a crime may be convicted on proof that a crime was committed and that he was a party to that

---

[7] (Citation and punctuation omitted.) *Osborn v. State*, 161 Ga. App. 132, 133 (1) (291 SE2d 22) (1982).

crime.[8] Whether a defendant was a party to the crime and aided and abetted in the commission of a crime is a matter for the trier of fact.[9] "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."[10] Criminal intent also may be inferred from a person's conduct during the commission of a crime, and from a person's words, conduct, demeanor, motive, and all connected circumstances.[11]

Cook testified that when he contacted his father about purchasing marijuana, his father said he did not have any, but drove his car over to pick up Cook and his companions. Cook also admitted that he neither said nor did anything to protest or stop the shooting; to prevent his father from being pushed out of the car; or to assist his father while his father was lying, injured, on the highway. Cook further testified that he never visited his father during the two to three weeks his father was in the hospital.

Further, Smith and one witness testified that while Smith was lying injured in the roadway, Cook got out of the car and walked back to look at him, then left without rendering aid. However, Cook denies walking back to look at his father, and other witnesses testified that they did not see Cook approach his father on foot. "It is of no consequence that [the defendant's] version of events . . . was in stark contrast to the victim's. The [trier of fact] apparently chose to believe [the victim]."[12] As we have held,

> [t]he weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for us to determine or question how the [trier of fact] resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict.[13]

---

[8] OCGA § 16-2-21.

[9] *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997).

[10] (Citations and punctuation omitted.) *Stoe v. State*, 187 Ga. App. 171, 173 (3) (369 SE2d 793) (1988).

[11] *Millender v. State*, 286 Ga. App. 331, 332 (1) (648 SE2d 777) (2007); OCGA § 16-2-6.

[12] *Williams v. State*, 236 Ga. App. 790, 792 (513 SE2d 757) (1999).

[13] (Citations and punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 88-89 (1) (469

In this case, there was ample evidence, based upon Cook's actions, and his presence, companionship, conduct, and demeanor before, during, and after the commission of the crime, for the trial court to conclude that Cook was more than "merely present" during the commission of the crimes at issue.

Further, pretermitting whether Cook's statement during the sentencing phase of his trial that he made arrangements with others in the vehicle regarding an attack on his father may be considered in assessing the sufficiency of the evidence, we find that the evidence and testimony presented at the trial-in-chief alone were sufficient to authorize the trial court to convict Cook.

In a case similar to the instant case, we found sufficient evidence to uphold the conviction of a defendant as a party to hijacking a motor vehicle where another person held a gun on the victim, and the defendant "made no attempt to distance himself from the hijacking while it was occurring, nor did he offer [the victim] any help whatsoever even after [the other person held] a gun on him."[14] Even though Cook testified that he did not try to help his father because the back-seat passenger was aiming a gun at Cook and because the others in the vehicle said they knew where he lived and he wanted to protect family members with whom he lives, it is for the trier of fact to determine the believability of such claims.[15] At trial, Cook testified that after the shooting, he did not report the crime to police, and when contacted by them, did not reveal the names or descriptions of the shooter or the other passenger. He testified that he did not report this information because "I really didn't even want to incriminate myself," and also because he was scared and wanted to protect his family. However, at trial, he named the shooter and described the appearance and clothing of both individuals in detail, and described the car they were driving. Cook testified that he still lives in the same place, with the same family members, but there is no indication that he ever sought protection for his family. Even though Cook offered an innocent explanation for his conduct, the trier of fact was not required to believe it, nor does Cook's contention on this point undermine the trial court's authorization to find that the evidence was sufficient to support Cook's conviction.[16]

---

SE2d 214) (1996).

[14] *Williams,* supra.

[15] *Spradley v. State,* 276 Ga. App. 842 (625 SE2d 106) (2005) (jury was free to disbelieve defendant's claim that he participated in crime under duress because another person was holding him at gunpoint).

[16] See *Engrisch v. State,* 293 Ga. App. 810, 811-812 (668 SE2d 319) (2008) (trial court authorized to find sufficient evidence to support armed robbery conviction, and failure of affirmative defense of coercion, where defendant claimed he participated in crime because other participants threatened his children, but where defendant, when apprehended, neither

Cook, arguing that value is an element of the offense of armed robbery, also urges that the evidence was insufficient to convict him of this particular crime because the state failed to show the value of the currency taken from Smith. Smith testified that the front-seat passenger pulled a gun on him and took some money from his pocket, in an unspecified amount in excess of $5. This testimony is uncontradicted, as Cook's testimony affirms that the front-seat passenger pulled a gun on Smith, but never addresses whether or not money was taken. OCGA § 16-8-41 (a) defines armed robbery, in pertinent part, as follows: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon . . . ." The statute presents no requirement of proof of value. Further, we have held that "[t]he crime of robbery, OCGA § 16-8-41, requires only that property, regardless of value, be taken from the person of another."[17] The case Cook cites on this point, *Stephens v. State*,[18] is unpersuasive. *Stephens* finds that despite a variance between allegations in an indictment and proof presented at trial, the indictment was nonetheless sufficient because the state presented "ample" proof of the amount of money at issue.[19] This does not indicate that a specific value must be proven; it merely invokes the well-trodden principle that a determination of the sufficiency or amplitude of evidence is one which each appellate court must make based on the record presented in the specific case before it, as appellate courts do not weigh evidence or judge witness credibility.[20] On appeal, as long as there is some competent evidence, even if contradicted, the verdict will be upheld.[21] We find no error.

Further, we have affirmed a conviction for armed robbery and aggravated assault where the defendant, while present during the crime, did not verbally threaten the victim; did not hold, shoot, or supply the gun used; and claimed no advance knowledge of the crime.[22] We also have found the evidence sufficient to uphold a conviction for possession of a firearm during the commission of a felony if the defendant, as here, was a party to the crime, but did not possess the weapon.[23]

---

sought protection for his children nor asked about their safety).

[17] *Bonds v. State*, 203 Ga. App. 51, 53 (4) (416 SE2d 329) (1992).

[18] 239 Ga. 446 (238 SE2d 29) (1977).

[19] Id. at 447 (2).

[20] *Stone*, supra.

[21] *Jackson v. State*, supra.

[22] *Lunz v. State*, 174 Ga. App. 893, 894-895 (1) (332 SE2d 37) (1985).

[23] *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991); *Brooks v. State*, 208 Ga. App. 869 (432 SE2d 612) (1993); OCGA § 16-11-106 (b) (possession of a firearm during the commission of a crime includes situation where the firearm is within arm's reach).

For the foregoing reasons, we find that a rational trier of fact could have found beyond a reasonable doubt that the evidence was sufficient to establish that Cook was guilty of aggravated assault, possession of a firearm during the commission of a felony, hijacking a motor vehicle, and armed robbery. The trial court was authorized to deny Cook's motion for a new trial.

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED FEBRUARY 22, 2012.

*Thomas S. Robinson III*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.