In the Supreme Court of Georgia

Decided: March 21, 2016

S15A1512. GILREATH v. THE STATE.

HUNSTEIN, Justice.

Appellant Christopher Gilreath was convicted of malice murder and associated crimes in connection with the beating death of two-year-old Joshua Pinckney, the son of his live-in-girlfriend, Miriam Pinckney. Gilreath now appeals, arguing, inter alia, that the evidence was insufficient and that he was prevented from presenting a complete defense. For the reasons that follow, we affirm in part and reverse in part.[1]

---

[1] In November 2009, a Forsyth County grand jury indicted Gilreath and Pinckney in connection with Joshua's death. Gilreath was charged as follows: count one, malice murder; count two, felony murder predicated on aggravated battery; count three, felony murder predicated on cruelty to children in the first degree (failure to get medical care); count four, aggravated battery; count five, cruelty to children in the first degree (failure to get medical care); count six, cruelty to children in the first degree (cruel and excessive physical pain caused by bruising); count seven, possession of cocaine. Pinckney was also named in counts three and five. Gilreath was tried August 16-25, 2010, and a jury returned guilty verdicts on all counts; the trial court sentenced Gilreath to life imprisonment for malice murder, 20 years concurrent for cruelty to children in the first degree (count six), and 10 years concurrent for possession of cocaine. The trial court concluded that all other counts merged or were vacated by operation of law; because we reverse Gilreath's convictions for malice murder and cruelty to children in the first degree, we need not address any possible merger error. Gilreath filed a motion for new trial on September

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Pinckney had two young children, Joshua and Maria, both of whom were adopted from Guatemala; Pinckney and her children were living with Gilreath at the time of Joshua's death. Pinckney saw Joshua alive on the evening of Wednesday, February 11, 2009, and numerous witnesses indicated that neither child had any visible injuries during the period leading up to that day. On February 12, 2009, Pinckney left the children at home alone with Gilreath while she went to work. During the morning of February 12, Pinckney made numerous attempts to contact Gilreath by phone, but she was unable to reach him. Gilreath, apparently unhappy with having to care for the children, eventually contacted Pinckney to advise her that Joshua had a "really bad diaper" and that she needed to return home.

Around 11:15 a.m., Pinckney left her job in Atlanta and traveled approximately 40 minutes to her Cumming residence. During her trip home, she was stopped (and cited) for speeding in Alpharetta and picked up lunch for her

1, 2010, which he amended on November 25, 2013. Following a hearing, the trial court denied the amended motion on May 23, 2014. Gilreath filed his notice of appeal on June 18, 2014. This appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

2

family. Upon her arrival, Gilreath advised Pinckney that Joshua was taking a nap on a bed in the master bedroom; Pinckney checked on Joshua, who did not stir, but she did not pull the covers down from his shoulders. Pinckney left to return to work approximately 15-20 minutes later and logged into her workstation at 1:02 p.m. Pinckney seemed normal when she returned to work and eventually left work for the day at approximately 4:15 p.m. While driving home, Gilreath contacted Pinckney and informed her that Joshua must have fallen because he had a bruise on his cheek and scrape on his face. When Pinckney arrived home, Gilreath reported that Joshua had gone back to sleep and was asleep on the same bed in the master bedroom. Pinckney checked on Joshua and discovered him "sleeping hard" in the same position in which she left him; Pinckney observed the scrape on his face and applied ointment.

Later in the evening, Gilreath and Pinckney put both children to bed, with Gilreath caring for Joshua. Pinckney subsequently went grocery shopping, which was confirmed by a Kroger receipt found at the residence; she did not check on the children when she returned or at any point the rest of the night. A little before 7:00 a.m. on February 13, Pinckney discovered Joshua lying in a puddle of his own vomit; she thereafter contacted 911. Although Gilreath

reported to medical personnel that Joshua was breathing that morning, first responders testified that Joshua showed no signs of life, had been dead for some time, and was bruised on his face and abdomen.

The medical examiner determined that Joshua had been severely beaten, sustaining injuries equal to that expected from a car accident, and died as a result of severe trauma to the head. The medical examiner opined that Joshua died somewhere between four and twelve hours before he was found, though eight-to-ten hours was most likely; the medical examiner also opined that Joshua sustained his injuries somewhere between four and fifteen hours before he died, though eight-to-twelve hours was most likely. The contents of Joshua's stomach suggested that he ate breakfast or lunch on February 12, and the medical examiner explained that Joshua would have been rendered unable to eat after the beating. A search of the couple's residence and Gilreath's vehicle revealed marijuana and drug paraphernalia, some of which tested positive for cocaine. Gilreath tested positive for both marijuana and cocaine metabolites; Pinckney did not test positive for any illegal substance.

1. Gilreath contends that the State's evidence was purely circumstantial and that it did not exclude all reasonable hypotheses except that of his guilt,

4

namely, that it could have been Pinckney who was responsible for Joshua's death. See OCGA § 24-4-6 (2010) ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").[2]

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

Robbins v. State, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). Accordingly, the evidence was sufficient to enable a rational trier of fact to find Gilreath guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). See also Scott v. State, 281 Ga. 373 (1) (637 SE2d 652) (2006).

2. The State moved the trial court to prohibit Gilreath from eliciting

---

[2] This provision is now codified at OCGA § 24-14-6, which is effective for trials conducted after January 1, 2013.

testimony from Pinckney's ex-husband, who testified as a witness for the State, that Pinckney had a history of threatening both children with physical violence and that, on one occasion, Pinckney slapped Maria in the face. The State's motion in limine was granted, Gilreath made an offer of proof, and the trial court reaffirmed its ruling. Gilreath now contends that the trial court abused its discretion in this respect. We agree.

> Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. [Cit.] However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature. [Cits.]

(Citations omitted.) Klinect v. State, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998). "[A] reasonable inference of the defendant's innocence [is] raised by evidence that render[s] the desired inference more probable than the inference would be without the evidence." Oree v. State, 280 Ga. 588, 593 (5) (630 SE2d 390) (2006). This Court reviews a trial court's decision on the admission of evidence for abuse of discretion. See Moore v. State, 295 Ga. 709 (2) (763 SE2d 670) (2014).

This Court addressed a similar scenario in Scott v. State, supra. The

6

defendant in Scott was convicted of felony murder in connection with the beating death of his infant daughter, Shaniya. 281 Ga. at 373. On the day of the murder, Shaniya was left in her father's care while her mother went to work; the child was healthy when the mother left for work, but Shaniya later died of trauma to the brain as a result of being hit with an object, being hit against an object, or being forcefully shaken. Id. at 374. At trial, the defendant was prevented from cross-examining the only other adult present in the residence at the time of the abuse, Wandisia Buffington, with evidence that she had been accused of abusing her own 23-month-old child. Id. at 376. Specifically, the defendant proffered DHR forms indicating that Buffington had been accused of "'beating the child, cussing at him and throwing him around.'" Id. This Court concluded that the evidence in question raised a reasonable inference of the defendant's innocence by showing "that the other adult in the apartment during the period of time that the fatal injuries were inflicted had a history of inappropriate behavior toward her own infant child, including an allegation of physically forceful abuse," and, further, that Buffington was connected to the corpus delicti by being present in the residence at the time the injuries occurred. Id. at 656-657. This Court determined that this error was not harmless and

7

reversed the defendant's felony murder conviction.

Here, Pinckney's ex-husband, an attorney, would have testified that: he observed Pinckney slap then-infant Maria in the face for refusing to eat breakfast and that he considered reporting the incident to the Department of Human Resources; Pinckney would cuss at the infant children or threaten the children with beatings (though the children were too young to understand); Pinckney had indicated that she wanted to send the children back to Guatemala; and Pinckney had a history of engaging in this type of behavior when she was feeling stressed or angry. This evidence, like the evidence in Scott, raises a reasonable inference of Gilreath's innocence and, like in Scott, Pinckney's presence in the residence on the day of the murder connects her with the corpus delicti. In addition, the exclusion of this evidence was not harmless. See Lindsey v. State, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict."). Here, the State elicited testimony from a variety of witnesses portraying Pinckney as a caring and capable mother. The trial court's ruling not only hamstrung the defense from rebutting testimony that Pinckney was a good mother, but the ruling also

8

prevented Gilreath, like the defendant in <u>Scott</u>, from presenting evidence that the only other person in the house at the time had a history of cruel treatment towards her own children.  The trial court's ruling here constituted reversible error.[3]

Accordingly, Gilreath's convictions for count one, malice murder, and count six, cruelty to children in the first degree (premised on cruel and excessive physical pain caused by bruising) must be reversed; our ruling does not, however, implicate Gilreath's conviction for possession of cocaine. Because the malice murder conviction is now reversed the following convictions no longer stand vacated by merger or operation of law: count two, felony murder predicated on aggravated battery; count three, felony murder predicated on cruelty to children in the first degree (failure to get medical care); count four, aggravated battery; and count five, cruelty to children in the first degree (failure to get medical care).  These convictions are also reversed; however, because we determined that the evidence was sufficient to support the original convictions, double jeopardy does not bar the State from retrying Gilreath on counts one

---

[3] The remaining issues raised on appeal either are unlikely to occur on retrial or were not preserved; accordingly, we do not address them.

through six.  See <u>State v. Caffee</u>, 291 Ga. 31 (3) (728 SE2d 171) (2012).

<u>Judgment affirmed in part, reversed in part, and remanded.  All the</u>

<u>Justices concur.</u>