**FOURTH DIVISION**
**REESE, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 7, 2020**

# In the Court of Appeals of Georgia

A20A1082. RICE v. THE STATE.

RICKMAN, Judge.

Following a bench trial, Justin Daniel Rice was convicted on seven counts of child molestation, two counts of sexual exploitation of children, and three counts of invasion of privacy. On appeal, Rice contends, inter alia, that the evidence was insufficient to sustain his convictions, that the trial court erred by granting the State's motions in limine regarding evidence against his wife, and that the trial court erred by failing to admit Rice's polygraph results. For the following reasons, we reverse.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Craft v. State*, 252

Ga. App. 834, 835 (558 SE2d 18) (2001). "In this case, there was a bench trial. When the trial court sits as the trier of fact, its findings are analogous to a jury verdict" and will not be disturbed if there is any evidence from which a rational trier of fact could find Rice guilty beyond a reasonable doubt. (Citation and punctuation omitted.) Id. at 840 (1).

So viewed, the evidence showed that a special agent with the Department of Homeland Security became aware of some photographs of a young girl online. The photographs were located in a folder titled "9-Y-O sleeping." The special agent testified that 3 of the 12 photographs, "were of a fully-clothed child that wouldn't arise any kind of normal issues." The special agent explained, however, "that there were nine images that were suggestive . . . as potential child sexual exploitation, which were images of a child sleeping in a dark room, clothed, but the clothes were arranged in such a way that led [agents] to believe that they had been partially removed or that she had been posed[.]" The special agent further explained that those 12 images were indicative of, but not child sexual exploitation material or contraband and that one would not be arrested for simply possessing the images.

Using clues from the background of some of the photographs, the special agent was able to identify the child depicted. After responding to a potential residence for

2

the child, the special agent made contact with Rice's wife. The special agent showed Rice's wife the photographs and she identified the child depicted as her daughter, S. E. Rice's wife initially told the special agent that she took one of the photographs in which S. E. was sleeping, and denied taking the other photographs. Rice's wife said that she would not take that many photos at once. In addition to S. E., Rice's young daughters, M. R. and E. R. also resided with him and his wife every other weekend.

Rice's wife got in touch with Rice and he spoke to the special agent on the phone. The special agent testified that he informed Rice about the images, asked Rice to come back to his house, and asked to look at Rice's phone. It took Rice double the amount of time to get home than he estimated for the special agent. After Rice arrived, he gave consent to search to his phone. There was nothing on Rice's phone and Rice informed the special agent that he had reset his phone the day prior.

Rice told the special agent that he did not recognize the name of the file-sharing website where S. E.'s pictures were discovered. Interestingly, the special agent noticed that Rice had a tattoo on his arm "of a cassette tape in the semblance of a skull and crossbones." Rice informed the special agent that the tattoo represented the logo of a website that the special agent testified was "a common resting place for

illicit material, everything ranging from pirated motion pictures and music to child pornography, child sexual exploitation material."

A special agent in computer forensics for the Department of Homeland Security testified that he downloaded the data from the cell phones belonging to Rice and his wife. The forensics agent determined that Rice performed a factory reset on his phone on the morning that the first special agent spoke to him. The forensics agent testified that he also analyzed the photographs and concluded that two or three of the photographs were taken with a Samsung cell phone 910 model and all of the other photographs were taken with a Samsung cell phone 920 model. At the time their phones were searched, both Rice and his wife had Samsung model 920 phones.

E. R. and M. R.'s mother testified that after she was told about the photographs, she asked both of her daughters "if anything had happened to them." M. R. immediately replied negatively but E. R. hesitated and her mother subsequently followed up with her. Eventually, E. R. told her mother that "she woke up one night and her vagina was being touched, but that she did not open her eyes and that she wiggled around to let the person know that she was waking up so that they would go away, and they did." E. R. did not see who touched her. At the time of the incident, E. R. shared a room with Rice, Rice's wife, and her sisters.

4

A corporal with the Gwinnett County police department performed a recorded, forensic interview of E. R. E. R. told the corporal that, at the time she was touched, her father, her father's wife, and M. R. were in the room. E. R. explained that her father's wife was against the wall and asleep when she was touched but that her eyes were closed and she did not actually see who touched her. E. R. thought that it was Rice who touched her.

At some point during the investigation, the special agent was contacted about additional photographs that were discovered. The special agent testified that he recognized those images to be indicative of sexual of exploitation of children. The photographs were of E. R. and S. E.

A grand jury returned an indictment charging Rice with 34 counts of child molestation, 2 counts of sexual exploitation of children, and 12 counts of invasion of privacy. Following a bench trial, Rice was convicted on seven counts of child molestation, two counts of sexual exploitation of children, and three counts of invasion of privacy. Rice filed a timely motion for new trial, which the trial court denied.

1. Rice contends that the evidence was insufficient to support his convictions.

(a) Child molestation (Count 1).

The indictment charged that Rice "did . . . unlawfully perform an immoral and indecent act upon the person of E. R., a child under the age of sixteen (16) years, by touching her vaginal area, with intent to arouse and satisfy the sexual desires of said child and said accused[.]" See OCGA § 16-6-4 (a) (1) (defining child molestation).

Here, the evidence showed that E. R. told her mother and the forensic interviewer that she woke up in the middle of the night to her vagina being touched. E. R. explained that Rice was present during the incident and that the only other adult in the room was asleep. E. R. was seven years old at the time of the incident. This evidence was sufficient to authorize the factfinder to find Rice guilty of child molestation. See *Zuniga v. State*, 300 Ga. App. 45, 48-49 (2) (684 SE2d 77) (2009) (affirming defendant's child molestation conviction based on circumstantial evidence); *Hall v. State*, 196 Ga. App. 523, 524 (1) (396 SE2d 271) (1990) ("Although the evidence was in conflict and depends largely on the credibility of the six year old victim, the credibility of witnesses and the resolution of such conflicts are for the jury.").

(b) Child molestation (Counts 4, 17, 18, 26, 28, 29, 36).

6

The indictment charged that Rice "did . . . unlawfully perform an immoral and indecent act upon the person of [S. E, M. R., and E. R.], . . . child[ren] under the age of sixteen (16) years by taking . . . sexually suggestive photograph[s] . . . with intent to arouse and satisfy the sexual desires of said child[ren] or said accused." See OCGA § 16-6-4 (a) (1) (defining child molestation).

"As a criminal statute, OCGA § 16–6–4(a) "must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted." (Citation and punctuation omitted.) *Vines v. State*, 269 Ga. 438, 438–39 (499 SE2d 630) (1998). "[W]hen a criminal statute fairly and reasonably is subject to two constructions, one which would render an act criminal, the other which would not, the statute *must* be construed strictly against the State and in favor of the accused. (Citation and punctuation omitted; emphasis in original). Id. at 439.

The State contends that the act of taking the photograph of the clothed children while they were sleeping constituted performing an immoral and indecent act upon them. The indictment alleges that the photographs were "sexually suggestive" but that phrase is not defined by statute and the State admits that "no Georgia law explicitly makes it a crime to take 'sexually suggestive' photographs." Interestingly, the State

7

further argues that "if done in a child's presence, taking a picture of a *potted plant* might be an act of child molestation if there is sufficient evidence to show that the photographer acted with sexual intent." We disagree.

The photographs at issue were of S. E. and E. R. asleep and clothed in underwear and a shirt and M. R. with her bottom exposed. There was no evidence that S. E., M.R., or E. R. were aware that the photographs were taken. There is no authority to support the State's argument that taking photographs of your sleeping, unaware daughter and step-daughter is an act of child molestation. Additionally, "even if the State's broad construction were reasonable despite the lack of any supporting authority, the contrary strict construction of OCGA § 16-6-4 nevertheless must be accepted because it is at least equally reasonable." *Vines*, 269 Ga. at 439.

"Furthermore, OCGA § 16-6-4(a) must be construed in connection with all of the other provisions of the criminal code." *Vines*, 269 Ga. at 439. OCGA § 16-12-100 (b) (1) criminalizes taking phonographs of minors engaging in sexually explicit conduct.[1] See OCGA § 16-12-100 (b) (1) ("It is unlawful for any person knowingly

---

[1] "'Sexually explicit conduct'" means actual or simulated: (A) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) Bestiality; (C) Masturbation; (D) Lewd exhibition of the genitals or pubic area of any person; (E) Flagellation or torture by or upon a person who is nude; (F) Condition of being fettered, bound, or otherwise

8

to employ, use, persuade, induce, entice, or coerce any minor to engage in or assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual medium depicting such conduct."). If the photographs depicted sexually explicit conduct, then Rice's alleged act would constitute the offense of sexual exploitation of children.

Accordingly, we conclude that Rice's actions in photographing S. E., M. R., and E. R., while concerning, did not constitute child molestation under OCGA § 16-6-4 (a). See *Vines,* 269 Ga. at 440; *Prophitt v. State*, 336 Ga. App. 262, 270-271 (784 SE2d 103) (2016) (physical precedent only). We therefore must reverse Rice's convictions for child molestation on Counts 4, 17, 18, 26, 28, 29, 36.

(c) Sexual exploitation of children (Counts 2 and 3).

The indictment charged that Rice "did knowingly create . . . photograph[s], a visual medium depicting a minor, [S. E. and E. R.], engaged in lewd exhibition of the

---

physically restrained on the part of a person who is nude; (G) Physical contact in an act of apparent sexual stimulation or gratification with any person's unclothed genitals, pubic area, or buttocks or with a female's nude breasts; (H) Defecation or urination for the purpose of sexual stimulation of the viewer; or (I) Penetration of the vagina or rectum by any object except when done as part of a recognized medical procedure." OCGA § 16-12-100 (a) (4).

genitals or pubic area, sexually explicit conduct." See OCGA § 16-12-100 (b) (1) (defining sexual exploitation of children).

One photograph was of S. E. sleeping with her shirt pulled up her underwear pulled down and the other was of E. R. sleeping in a shirt with her underwear pulled down and her legs spread. At the time the photographs were taken, S. E. and E. R. were eight years old. A rational trier of fact could infer that S. E. and E. R. were lewdly exhibiting their genitals in the photographs, and thus the evidence was sufficient to support Rice's convictions for sexual exploitation of children on Counts 2 and 3. See *Craft*, 252 Ga. App. at 841-842 (1) (b).

(d) Invasion of privacy (Counts 39, 40, and 41).

The indictment charged that Rice "did, through the use of a device, to wit: cellular telephone, without the consent of all persons observed, photograph the activities of another person[s], to wit: [E. R. and S. E.], in a private place, a bedroom, and out of public view[.]" See OCGA § 16-11-62 (2) (defining unlawful eavesdropping or surveillance). "'Private place' means a place where there is a reasonable expectation of privacy." OCGA § 16-11-60 (3). "As the Supreme Court of Georgia has noted, OCGA § 16-11-62 was intended to protect all persons from an invasion of privacy. . . . There is no express exception for family members." (Citation

10

and punctuation omitted.) *Snider v. State*, 238 Ga. App. 55, 57 (1) (b) (516 SE2d 569) (1999).

We have previously affirmed convictions for criminal invasion of privacy where the evidence showed that a teenage stepdaughter was filmed by her step-father while nude in her bedroom, a teenage daughter was filmed through her bedroom window by her father while she undressed, and for a teenager was photographed by her guardian after she had passed out in the bathroom while nude. See *Price v. State*, 320 Ga. App. 85, 86 (2) (738 SE2d 289) (2013); *Snider*, 238 Ga. App. at 57-58 (1) (b); *Kelley v. State*, 233 Ga. App. 244, 249 (2) (503 SE2d 881) (1998), disapproved of on other grounds by *State v. Burns*, 306 Ga. 117, 124 (2) FN 3 (829 SE2d 367) (2019).

Here, however, the photographs were not taken of nude or partially nude teenagers. The subjects of the alleged invasion of privacy were two eight year old girls who were asleep in a bedroom that they shared with Rice and Rice's wife. Neither of the girls testified at trial that they did not consent to the photographs being taken. The State failed to show both that the photographs were taken without the girls consent and that the young girls had a reasonable expectation of privacy while they were sleeping in a bedroom that they shared with their parents. See *Price*, 320 Ga.

11

App. at 86 (2) (State required to show "that the recording was made without the consent of all persons"); *Snider*, 238 Ga. App. at 57 (1) (b) (teenage victim "was of an age to understand that she had a right to privacy in certain situations" including in her bedroom). Accordingly, because the State failed to meet its burden, we reverse Rice's convictions for invasion of privacy.

2. In two enumerated errors Rice contends that the trial court erred by granting the State's motions in limine excluding information about Rice's wife's occupation and excluding Rice from "pointing the finger" at his wife. We agree.

When analyzing the admissibility of testimony implicating another person,

> [c]ertainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature

(Citation and punctuation omitted.) *Gilreath v. State*, 298 Ga. 670, 673 (2) (784 SE2d 388) (2016). "A reasonable inference of the defendant's innocence is raised by evidence that renders the desired inference more probable than the inference would

12

be without the evidence." (Citation and punctuation omitted.) Id. "This Court reviews a trial court's decision on the admission of evidence for abuse of discretion." Id.

At the hearing on the State's motion in limine, Rice explained that his wife had an online sex business whereby she would perform sexual acts in exchange for money using a web camera. Rice's wife advertised herself online in order to attract more customers. Rice argued that,

> the fact that [Rice's wife] maintains an online sex business, the fact that she has the sophistication and the wherewithal to upload photographs to the Internet as a calling card, the fact that she is sophisticated enough to know where to put those images, the fact that she is sophisticated enough to know where to upload photos of herself, that she is sophisticated enough to be able to engage in providing her services in exchange for money, the fact that a person can upload credit card information and she's able to obtain those funds and she's able to put herself out there, that shows there's another person in the household with the ability and the sophistication to have posted these photographs.

In addition to Rice's wife's involvement and knowledge of the online sex business, she resided in the same bedroom as the children, she had the same make and model of phone that took some of the photographs, and when she was initially confronted by the special agent she immediately admitted to taking one of the photographs. In its brief, the State argues that, [w]hile evidence about [Rice's wife's]

13

online activities may have made [Rice's] defense incrementally stronger, it strains credulity . . . to say that his theory was eviscerated by its absence." The State acknowledges "the circumstantial nature of [Rice's] case," but takes the position that, "[Rice's] arguments seem to have largely succeeded [because] he was acquitted of 35 of the 48 counts in his indictment, or about 73% of his charges." Further, the State argues that "[t]he fact that the trial court may have disagreed with [Rice's] defense theory on 27% of his charges does not mean he was barred from effectively asserting it."

Rice's sole defense was that his wife committed the crimes for which he was charged. That Rice was acquitted of the some of his charges is not relevant to the determination of whether he was able to adequately present his defense. The trial court's rulings prevented Rice from not only presenting evidence that the only other adult sharing a room with S. E. and E. R. had experience in the online sex trade, but also from cross-examining her about it.

The evidence about Rice's wife's occupation in combination with the other testimony about her opportunity to commit the crimes in question, raises a reasonable inference of Rice's innocence and connects his wife with the corpus delicti. Accordingly, the trial court abused its discretion and Rice's convictions must be

14

reversed. See *Gilreath*, 298 Ga. at 674-675 (2) (reversing defendant's convictions because "[t]he trial court's ruling not only hamstrung the defense from rebutting testimony that [defendant's girlfriend] was a good mother, but the ruling also prevented [defendant] . . . from presenting evidence that the only other person in the house at the time had a history of cruel treatment toward her own children"); *Scott v. State*, 281 Ga. 373, 377-378 (3) (637 SE2d 652) (2006) (holding that the trial court erred by excluding evidence that the only other adult in the residence at the time a child was injured had a history of inappropriate behavior against her own child).

Because we have determined that the evidence was sufficient to support Rice's convictions on counts 1, 2, and 3 (child molestation and sexual exploitation of children), the State is not barred from retrying Rice on those counts. See *Gilreath*, 298 Ga. at 675 (2).

3. Rice contends that the trial court erred in excluding evidence that he passed a polygraph.

We address this enumeration because it is likely to occur at retrial. Rice took and passed an unstipulated polygraph and the trial court excluded the results because of the lack of stipulation.

"It has been stated and reiterated that under the law as it now exists in this State, results of polygraph tests are admissible only upon the *express* stipulation of the parties." (Citation and punctuation omitted; emphasis in original.) *McGraw v. State*, 199 Ga. App. 389, 393 (10) (405 SE2d 53) (1991). "Neither the legislature nor the Supreme Court has provided for admission under the theory of a stipulation implied by the circumstance of favorable evidence for the accused." Id. Accordingly, the trial court did not err by failing to admit the results of Rice's polygraph. See *McIntyre v. State*, 207 Ga. App. 129, 130 (2) (427 SE2d 99) (1993); *McGraw*, 199 Ga. App. at 393 (10).[2]

*Judgment reversed. Reese, P. J., and Brown, J., concur*.

---

[2] We will not address Rice's argument that the trial court erred by allowing other acts evidence pursuant to OCGA § 24-4-404 (b). In the event of retrial, the trial court would need to again consider whether this evidence would be admissible considering the remaining charged offenses.