312 Ga. 619
FINAL COPY

S21A1029.  LANE v. THE STATE.

COLVIN, Justice.

Following a jury trial, Tyra Dale Lane was convicted of felony murder and related offenses in connection with crimes he committed against Danielle Simpson and Austin Young.[1]  Lane appeals, alleging that the trial court erred by allowing witness Bernard

---

[1] On December 3, 2002, a Fulton County grand jury indicted Lane for the malice murder (Count 1) and felony murder of Simpson (predicated on aggravated assault — Count 2 — and armed robbery — Count 3), aggravated assault of Young (Count 4), false imprisonment of Young (Count 5), aggravated assault of Simpson (Count 6), armed robbery of Simpson (Count 7), and for possessing a firearm during the commission of a felony (Count 8).  At a jury trial held from February 23 through 27, 2004, Lane was acquitted of malice murder but found guilty of all other counts.  Lane was sentenced to life in prison with the possibility of parole for felony murder predicated on aggravated assault, twenty years consecutive for the aggravated assault of Young, five years consecutive for the false imprisonment of Young, ten years consecutive for the armed robbery of Simpson, and five years consecutive for the weapon charge.  All remaining counts were either merged or vacated by operation of law for sentencing purposes.

Lane timely filed a motion for new trial on March 5, 2004, which he later amended through new counsel on September 10, 2018, and April 24, 2019.  After a hearing, the trial court denied the motion as amended on March 13, 2020.  Lane timely filed a notice of appeal.  The appeal was docketed to the August 2021 term of this Court and submitted for a decision on the briefs.

Champion to testify regarding a polygraph test, that he was denied constitutionally effective assistance of counsel, and that the cumulative effect of these errors prejudiced him. For the reasons set forth below, we affirm.

The evidence presented at trial showed that, on November 6, 2002, assistant manager Simpson and restaurant employee Young were working the third shift[2] at a Krystal restaurant in College Park. The State presented testimony that, prior to this incident, Lane seemed to be struggling financially and had asked friends for money.

Around 5:00 a.m., two 911 dispatchers pulled into the restaurant's drive-thru to pick up food before heading to work. The dispatchers saw two employees working behind the counter. A third person, whom they later identified as Lane, was standing at the counter wearing a plaid jacket. The dispatchers got their food and drove to work. After serving the customers, Simpson went into the

---

[2] The record shows that the third shift started at 10:00 p.m. and ended at 6:00 a.m.

restaurant's office. Young was preparing food when the person wearing a plaid jacket brandished a single-shot shotgun and forced Young into the freezer, where Young remained until he heard gunshots coming from the direction of the office. He then escaped from the freezer and ran to a nearby gas station to call for help.

The shooter fled the restaurant, and, shortly thereafter, restaurant employee William Owens arrived for his shift. Owens noticed that the door to the restaurant was unlocked, which was against standard procedure. He found Simpson in the office with a fatal gunshot wound and immediately called 911. Officers arrived at the scene and, during their investigation, learned that approximately $871 was missing from the safe and $75 in bills and rolled coins had been taken from the cash registers. Young gave officers a detailed description of his assailant and later identified Lane in a photo line-up as the perpetrator. Dr. Karen Sullivan conducted Simpson's autopsy and concluded that a shotgun wound to the head caused Simpson's death.

Kristie Miller, Lane's girlfriend, testified that, around 9:00

a.m. on November 6, Lane called her and told her "he had did something bad." Lane's friend, Bernard Champion, testified that Lane stopped by for a visit on the morning of November 6. Lane was wearing a plaid jacket and told Champion to turn on the news. When the story about the robbery and shooting at the Krystal appeared, Champion testified that Lane started "fidgeting" and said he "had did one." Then Champion and Lane took a taxi to a liquor store and went to see Miller. Lane paid for everything using cash, and talked to the taxi driver about various destinations, including South Carolina. Miller testified that Lane showed up at her home in Griffin, Georgia, later that day and admitted to her that he had killed a woman at the Krystal. Lane then gave Miller $50 in cash. Champion testified that he was present for the conversation between Lane and Miller and stated that Lane gave him approximately 50 dollars' worth of coins in rolled sleeves that morning.

Herman Anderson, the taxi driver, confirmed at trial that he had driven Lane and Champion around Griffin on the morning of

4

November 6. He also testified that Lane requested to be driven to a bus station in North Carolina. When they reached the destination, Lane paid Anderson in cash and rolled coins.

Lane was eventually arrested at Miller's apartment. In his interview with police, Lane admitted that he was at the Krystal on November 6. He told officers that he was an employee at that location for approximately one year, that he usually worked the third shift, and that he remained friends with Simpson even after he lost his job. Lane said he went to the Krystal that morning with Champion to ask Simpson about getting his job back. But, Lane claimed, when they got to the restaurant, Champion grabbed a shotgun from the back of the car and went inside. Lane denied entering the restaurant and denied participating in the robbery and shooting, instead placing the blame entirely on Champion.

1. During Champion's direct examination, the prosecutor asked Champion if there was ever a time during his post-incident interview with officers when he "made offers to the police to show that [he was] telling the truth?" Champion replied, "Yes, ma'am."

5

The defense objected and asked to approach the bench.  The bench

conference that followed was not transcribed.  The prosecutor then

resumed her questioning as follows:

> PROSECUTOR: Again, Bernard, let me ask you that question again. What did you offer to do?
> CHAMPION:    Told them, if they chose to, they could place me on a lie detector test.
> PROSECUTOR: Did they take you up on that offer?
> CHAMPION:    No.

Lane contends that the trial court erred by allowing Champion

to testify that he told police officers that he was willing to take a

polygraph test.  However, Lane failed to place the specific grounds

for his objection on the record at trial, and there is no ruling by the

trial court on Lane's objection.  Because this case was tried in 2004

under Georgia's old Evidence Code, plain error review of evidentiary

matters is not available.  See *Pyatt v. State*, 298 Ga. 742, 746, n.7

(784 SE2d 759) (2016) (explaining that "the new Evidence Code['s

plain error review] explicitly applies only to 'any motion made or

hearing or trial commenced on or after (January 1, 2013).' Ga. L.

2011, p. 99, § 101").  Therefore, "[t]he new Evidence Code does not

6

apply in this case, and in the absence of a timely objection, there is no appellate review of evidentiary rulings under the old Evidence Code in a case like this one." Id. at 746, n.7 (citing *Durham v. State,* 292 Ga. 239, 240 (2) (734 SE2d 377) (2012)). See also *Mosley v. State*, 298 Ga. 849, 853 (2) (c) n.3 (785 SE2d 297) (2016) (noting that, under Georgia's old Evidence Code, "[a]n off-the-record objection does not preserve an issue for appellate review"). Consequently, this claim is not preserved.

2.     Lane also alleges that he received ineffective assistance of trial counsel based upon counsel's failure to: (a) introduce evidence of Champion's criminal record at trial, and (b) object to the State's closing argument. In order to establish constitutionally ineffective assistance, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test,

7

this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012). With these principles in mind, we review Lane's claims of ineffective assistance.

(a) *Champion's criminal record.*

Lane alleges that trial counsel was ineffective for failing to introduce copies of Champion's prior felony convictions that were entered between 1990 and 2004 for impeachment purposes. Lane raised this claim in his September 2018 amended motion for new trial, but the trial court did not issue a ruling on this claim. "Although the trial court failed to make any specific factual findings regarding [Lane's] claim[ ] of ineffectiveness, remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland*." (Citation and punctuation omitted.) *Burrell v. State*, 301 Ga. 21, 24 (2) (799 SE2d 181) (2017).

Turning to Lane's claim, at the hearing on Lane's amended motion for new trial, Lane introduced certified copies of Champion's prior convictions and sentences for theft by receiving stolen property

8

(in October 1990; three years' probation); theft by taking and theft by receiving stolen property (in July 1991; two years to serve concurrent to revocation of 1990 probation sentence); three counts of entering an auto and one count of theft by taking (in July 1991; six years' probation); criminal attempt to commit theft by taking and giving a false name to a law enforcement officer (in April 1992; two years in prison reduced to time served); theft by receiving stolen property (in September 1992; eight years to serve three); entering an auto (in August 1996; five years to serve three); theft by taking (in February 2004; ten years to serve); and possession of cocaine (in February 2004; ten years to serve concurrent to the theft by taking).[3] Trial counsel testified that his failure to impeach Champion with these convictions was an oversight and was not done with a strategic purpose; Lane relies on this testimony in support of his argument that counsel acted deficiently. However,

---

[3] Lane attempted to introduce what he alleged to be two additional certified convictions, but the trial court did not admit them because one exhibit was a duplicate and the other exhibit showed that the State had nolle prossed the case.

we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way.

*Shaw v. State*, 292 Ga. 871, 875 n.7 (742 SE2d 707) (2013).

Here, the record shows that trial counsel thoroughly attacked Champion's credibility through other means. During Champion's cross-examination, counsel elicited testimony that Champion was incarcerated and serving a ten-year felony sentence, that he was a prior convicted felon as well, and that he worked as a confidential informant "making cases" for the Griffin-Spalding Narcotics Task Force. Later, during Lane's direct examination, trial counsel elicited testimony from Lane that Champion "lied on [him]," that Champion was the actual shooter, and that Lane went along with Champion's plan on the night of the crimes because Lane was scared of Champion. Finally, during closing arguments, defense counsel emphasized all of this evidence, as well as Champion's jail attire, in

10

order to call Champion's credibility into question.

Based on the foregoing, we cannot say that no competent attorney would have chosen to forgo impeaching Champion with additional, decade-old convictions in favor of attacking his credibility in the manner pursued by counsel in this case. Accordingly, Lane cannot show that counsel acted deficiently by failing to impeach Champion with his additional felony convictions. See *Romer v. State*, 293 Ga. 339, 344-345 (3) (a) (745 SE2d 637) (2013) (emphasizing that the extent of cross-examination is a matter of trial strategy, and holding that, "[i]n light of the cross-examination [trial counsel] conducted, Appellant has not shown that it was patently unreasonable [for trial counsel] to decide not to try to generally impeach [a witness's] credibility with her prior convictions").

(b) *The State's closing argument.*

During closing arguments, defense counsel argued that the evidence showed that Champion, and not Lane, was the actual shooter. In support of this argument, counsel emphasized that

11

Champion was not a credible witness; that he was "smarter" and "more calculating" than Lane; that he had the motive and the means to commit the crimes, including access to a shotgun; and that Champion avoided being charged with murder in this case by "setting his buddy [Lane] up, call[ing] the cops, sa[ying], I know who did that crime. It's Tyra Lane." In response, the prosecutor argued that Champion was a credible witness, stating, in relevant part:

> Bernard offered to take a lie detector test, ladies and gentlemen, to the police. He told them, if you don't believe me, if you think I did it, I will take a lie detector test. They didn't feel it necessary to take him up on his offer. If he was considered a suspect, he wasn't considered a suspect as far as being the shooter. At most he was being considered a suspect as being an accomplice after the fact, but he was never being considered as the shooter. If they thought he was lying, ladies and gentlemen, wouldn't they have hooked him up to see how he did? He offered.

Trial counsel did not object to this statement. Lane argues that trial counsel was ineffective for failing to object because, Lane claims, the statement amounted to an improper argument that bolstered Champion's credibility. Even assuming that trial counsel performed deficiently by not objecting to this argument, however, Lane "has

12

failed to show a reasonable likelihood that, absent the failure of his lawyer to object to the prosecuting attorney's statements, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Davis v. State*, 306 Ga. 140, 149 (3) (i) (829 SE2d 321) (2019). Not only did the State present substantial evidence of Lane's guilt, but the trial court also instructed the jury that closing arguments were not evidence. See id. Accordingly, this claim fails.

3. Finally, Lane argues that he is entitled to a new trial on the basis of cumulative prejudice pursuant to *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020). However, because there are no trial court errors properly before us for appellate review, *Lane* does not apply. See *Woods v. State*, 312 Ga. 405, 410 (3) (a) n.7 (862 SE2d 526) (2021). This Court does assess prejudice based on the cumulative effect of all of trial counsel's deficiencies. See *Debelbot v. State*, 305 Ga. 534, 544 (2) (826 SE2d 129) (2019). Still, in order to conduct such an analysis, we "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors."

(Citation and punctuation omitted.) *Sullivan v. State*, 301 Ga. 37, 42 (2) (d) (799 SE2d 163) (2017). Because we have only assumed deficiency on one claim of ineffective assistance, Lane is not entitled to relief on this basis.

*Judgment affirmed. All the Justices concur.*

Decided October 5, 2021.

Murder. Fulton Superior Court. Before Judge Adams.

*Steven E. Phillips*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Sr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.