**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 16, 2025

S25A0566. SPRAYBERRY v. MORRIS.

PETERSON, Chief Justice.

More than fifteen years ago, a jury found Edward Morris guilty of murder, aggravated assault, criminal street gang activity, and related offenses in connection with incidents involving two victims, Randy Griffin and Lacey Magee. After we affirmed his convictions, see *Morris v. State*, 294 Ga. 45 (2013), Morris filed a habeas corpus petition asserting that his trial counsel and appellate counsel were constitutionally ineffective in a host of ways. The habeas court granted relief on all but one of Morris's claims, and Warden Kevin Sprayberry appeals from that ruling. As discussed in more detail below, we reverse; the habeas court erred as to each ground on which it granted relief. One claim remains unresolved by the habeas court,

so we remand for further consideration as to that claim.

1. *The underlying proceedings*

(a)    *The trial evidence*

Morris was tried jointly with several co-defendants, including Carlos Drennon. We affirmed Morris's convictions,[1] describing the evidence from the trial as follows:

> Morris was a member of the "International Robbing Club" or "IRC," a loosely affiliated group of friends and associates who planned and executed so-called "licks," robberies of individuals believed to possess significant amounts of cash, drugs, jewelry, and other high value items. In May 2007, IRC members targeted Griffin, a jewelry merchant who regularly wore flashy jewelry. In the early hours of May 22, 2007, Morris and various co-indictees followed Griffin as he was driving home from a night club, intending to rob him. When Griffin and Magee, his girlfriend, pulled into Griffin's driveway and exited their cars, shots were fired at them from a gold Toyota Avalon occupied by Morris and co-defendants Carlos Drennon, Maurice Hargrove, and Vincent Morris. Magee was shot in the hand, and Griffin returned fire. The Avalon drove off, with both Drennon and Vincent Morris having been shot.

*Morris*, 294 Ga. at 46.

---

[1] We also previously resolved Drennon's appeal, rejecting most of his claims but remanding for record development on his right-to-be-present claim. See *Drennon v. State*, 314 Ga. 854, 855 (2022).

2

Meanwhile, another car containing fellow IRC members Marciell Easterling, Daquan Stevens, and Jonathon Collins had followed the Toyota Avalon and parked on a road nearby. See *Drennon v. State*, 314 Ga. 854, 856 (2022).

> After they heard the gunfire in the complex, they saw a person run across the road. Unsure of who it was, Easterling, who was driving the car, drove forward. The person was Griffin, and he ran up to Easterling's car. Collins told Griffin to get in, and he did. Panicked and unaware that the occupants of the car were part of the group trying to rob him, Griffin told the people in the car that someone had tried to rob him and had shot his girlfriend. Griffin had a gun in his hand. According to Easterling, the car's occupants were also carrying guns, but they were on the floor of the car, so there "wasn't no way that we could reach for our gun to do anything to him." About that time — which was only about 30 seconds later — the Avalon in which the other members of the group were riding "skidded out of the parking lot" of Griffin's complex. Griffin got out of the car Easterling was driving and started shooting at the Avalon; he then ran back toward his condominium.

Id. Tiffany Bankston, who had been dating Drennon, testified that Easterling and Stevens told her that on the day Griffin was robbed, "someone had 'jumped out too fast' that night, implying that the group driving with Easterling might have killed Griffin that night if

3

they had the chance." Id. at 857. "Following the incident, Magee and Drennon were treated for their injuries at the same hospital, and Griffin, who had accompanied Magee to the hospital, identified Drennon as one of their assailants, leading to Drennon's arrest." *Morris*, 294 Ga. at 46.

After his arrest, Drennon had several recorded phone conversations with his IRC associates about trying to locate Griffin. *Drennon*, 314 Ga. at 857–58. In one conversation, Drennon asked Easterling if "everything straight" and if they had "seen ol' girl," referring to Griffin. Id. at 858. Easterling responded that they had not seen "ol' girl" because "she had moved." Id. In another conversation between Drennon and Hargrove, they discussed how that "ho" got in the back of the car with Easterling, Drennon was "sweatin' that ho," Drennon was relying on Hargrove to "lay that ho out for me," and Hargrove promised to "f**k the s**t out that ho." Id. In another conversation, Drennon told Stevens that he had been "watching the motherf**king news" and nothing was happening, imploring Stevens to "go get that girl, man, … hurry up." Id. In a

4

conversation with Morris, Drennon talked about the person who had jumped in the car and had identified him in the robbery (i.e., Griffin), and Morris said he would have "slapped" that person and agreed with Drennon that "all of that" could have been stopped when the person was in the car. Id.

Easterling testified that IRC members, including Morris, had planned Griffin's murder to retaliate for Drennon's arrest. *Morris*, 294 Ga. at 46–47. Specifically, Easterling testified that the day after the robbery of Griffin, Morris had spotted Griffin's vehicle outside a store and called Easterling. Easterling met Morris at Morris's house, along with Hargrove and Stevens. They all traveled together with guns to the store where Morris had spotted Griffin's vehicle with the intent to kill Griffin. When they arrived, Griffin could not be found.

"[I]n the early morning hours of June 10, 2007, Griffin was shot and killed outside Club 112, a Midtown nightclub." *Morris*, 294 Ga. at 46. Easterling testified that the day after the shooting, Morris recounted how he and others drove to Club 112 on the night of the murder and waited for Griffin to emerge, at which point Hargrove

5

and Collins fired at Griffin. See id. at 47.

> Morris'[s] presence at the scene of the murder was corroborated by cell tower triangulation evidence placing Morris' cell phone at the crime scene at the time of the shooting. In addition, a former girlfriend of Morris[, Shani Monique Tennyson,] told police that Morris had told her he had been present when Griffin was killed and that Hargrove had been the triggerman.

Id.

Easterling testified that after he learned of Griffin's murder, he informed Bankston and told her to let Drennon know. *Drennon*, 314 Ga. at 857. Bankston confirmed that she learned of Griffin's death from Easterling and later told Drennon that her "Auntie Monique" had killed her husband last night and that "she" did it at Club 112, "which was code that Hargrove shot Randy Griffin." Id. at 857, 859. Drennon later talked to Hargrove, who confirmed that the "n***** f**ked the s**t out of that ho, man." Id. at 859.

> Easterling also implicated the IRC in several crimes in addition to those involving Griffin. These crimes included a September 2006 attack on, kidnapping of, and burglary of the home of victim Gary Lester. Lester, who had previously had dealings with Morris and other IRC associates, corroborated Easterling's account and identified Morris as a participant in his abduction.

6

The State also presented Detective David Quinn, who testified about information he received regarding various IRC-perpetrated crimes from Drennon, who had been acting as an informant prior to his arrest for the attempted armed robbery of Griffin. In addition, the State called Sergeant A.C. Lyda, a DeKalb County police officer, who testified as an expert regarding the general activities and culture of criminal street gangs.

*Morris*, 294 Ga. at 47.

Based on this evidence, the jury found Morris guilty on nine charges, and the trial court sentenced Morris to life in prison for the malice murder of Griffin in June 2007, ten years consecutive for the attempted armed robbery of Griffin in May 2007, 20 years concurrent for the aggravated assault of Griffin in May 2007, 20 years consecutive for the aggravated assault of Magee, five years consecutive for firearm possession during commission of the aggravated assaults, and 15 years consecutive for criminal street gang activity, all to be served in prison. See *Morris*, 294 Ga. at 46 n.1. The jury found Morris not guilty on the other firearms count, and the remaining charges were vacated by operation of law or

merged for sentencing purposes. See id.

Morris filed a motion for new trial though trial counsel, but it was withdrawn. *Morris*, 294 Ga. at 46 n.1. Trial counsel filed a notice of appeal on August 16, 2012, and once the case was docketed in this Court, moved to withdraw as the attorney of record. This Court denied trial counsel's motion to withdraw and ordered counsel to file a brief, which he did on May 24, 2013. After trial counsel filed that brief, Morris obtained new counsel ("appellate counsel"), who filed a motion to remand, generally asserting that it was necessary to preserve Morris's rights. In his motion and in filings in support of that motion, appellate counsel did not argue that a remand was necessary because Morris wished to raise ineffectiveness claims against trial counsel. The State opposed the motion because Morris did not indicate that he wished to assert these claims. This Court denied the motion to remand, but allowed appellate counsel to file a substitute brief. That substitute brief did not assert any claims that trial counsel was ineffective.

We affirmed Morris's convictions and, in the process, sua

sponte reviewed the sufficiency of the evidence and determined that the evidence was sufficient. *Morris*, 294 Ga. at 46, 48.

(b) *Habeas proceedings*

In 2017, Morris filed the habeas petition in this case, raising multiple claims of ineffective assistance of trial and appellate counsel. Morris alleged his trial counsel was ineffective for: failing to ensure his presence at bench conferences during voir dire and "during trial"; failing to consult with or call a defense expert in cell tower analysis; failing to interview or call Collins as a witness; and waiving Morris's motion for a new trial without his consent. Morris asserted that appellate counsel was ineffective in handling Morris's appeal by: failing to raise a claim that this Court's refusal to remand the case was erroneous; failing to raise claims that trial counsel was ineffective on various grounds; failing to argue that the evidence was insufficient to support his convictions; failing to argue that the trial court erred by denying bifurcation of the gang count; and failing to raise a right-to-be-present claim. Following a hearing, the habeas court granted relief on all of these grounds, and this appeal followed

2. *General framework of our analysis*

The Warden challenges the habeas court's grant of relief on each claim. We agree that the habeas court was wrong as to each claim, so we reverse. Before addressing each of those grounds, we set out the general framework that will guide our analysis.

"In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts." *Dozier v. Watson*, 305 Ga. 629, 629–30 (2019). A petitioner seeking habeas relief bears the burden of establishing that his constitutional rights were violated. See *Ward v. Medina*, 316 Ga. 345, 349 (2023).

In his habeas petition, Morris argued that appellate counsel was ineffective for failing to raise certain claims on appeal, including claims that trial counsel was ineffective; Morris also raised independent claims that trial counsel was ineffective. The independent claims that trial counsel was ineffective are procedurally defaulted, however, because appellate counsel could

have raised these claims on appeal.[2] See, e.g., *State v. Butler*, 301 Ga. 814, 817–18 (2017) (ineffective assistance claims were barred where the post-conviction attorney failed to raise the claims at the first possible stage of post-conviction review); *Hall v. Lewis*, 286 Ga. 767, 769 (2010) (claims barred where counsel appointed to represent the defendant in post-conviction proceeds could have raised the ineffectiveness claims in the motion for new trial *and* on direct appeal); *White v. Kelso*, 261 Ga. 32, 32 (1991) (because an ineffectiveness claim may be raised for the first time in the direct appeal if the direct appeal marks the first appearance of new counsel, appellate counsel's failure to raise the claim, either in a motion for new trial or on direct appeal, waived the claim).

Morris can overcome this procedural default by showing that appellate counsel was ineffective for failing to raise on appeal claims of trial counsel's ineffectiveness. See, e.g., *Hall*, 286 Ga. at 769

---

[2] The habeas court did not resolve whether the independent claims against trial counsel were procedurally defaulted because it concluded that Morris could overcome any procedural default based on appellate counsel's ineffectiveness. As discussed herein, this conclusion was wrong.

11

(establishing appellate counsel's ineffectiveness in this context is sufficient to meet "cause and prejudice" test applied to procedurally defaulted claims). To establish that appellate counsel was ineffective for failing to assert an error on appeal, whatever that claim might be, "a habeas petitioner must show that his appellate counsel was deficient in failing to raise an issue on appeal and that, if counsel had raised that issue, there is a reasonable probability that the outcome of the appeal would have been different." *Rozier v. Caldwell*, 300 Ga. 30, 31 (2016) (quotation marks omitted). Where ineffectiveness of appellate counsel is premised on the failure to assert ineffectiveness of trial counsel, demonstrating that the outcome of the appeal would have been different necessarily requires establishing trial counsel's ineffectiveness. See *Gramiak v. Beasley*, 304 Ga. 512, 513 (2018) ("[I]f [the defendant] cannot show his trial counsel provided ineffective assistance of counsel, then [he] also cannot show ineffective assistance of appellate counsel, because an attorney is not deficient for failing to raise a meritless issue on appeal.").

Deficient performance is established if "the identified acts or omissions were outside the wide range of professionally competent assistance." *Bowen v. Noel*, 313 Ga. 92, 96 (2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). Establishing deficient performance "is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably," and to overcome this presumption, Morris "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Brown v. State*, 302 Ga. 454, 457 (2017). In evaluating appellate counsel's performance, the question is not whether counsel's "decision not to raise a particular issue was correct or wise, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt." *Seabolt v. Hall*, 292 Ga. 311, 314 (2013) (cleaned up); see also *Head v. Ferrell*, 274 Ga. 399, 404 (2001) ("Appellate counsel does not render deficient performance by selecting stronger claims for presentation on direct appeal while setting aside weaker ones."). The reasonableness of appellate counsel's conduct is assessed from the perspective of

13

counsel at the time of the appeal and under the specific circumstances of the case. See *Barker v. Barrow*, 290 Ga. 711, 712 (2012).

With that framework, we consider whether appellate counsel was ineffective in any of the ways alleged by Morris.

>  3. *Appellate counsel was not ineffective with respect to Morris's right-to-be-present claim, either as a direct claim or in the context of trial counsel's ineffectiveness.*

In his amended habeas petition, Morris argued that trial counsel was ineffective for not allowing Morris to be present at nine bench conferences during voir dire, failing to get his consent to handle these bench conferences without Morris, and failing to confirm that Morris acquiesced in not being present at the bench conferences. As to appellate counsel, Morris alleged that counsel was ineffective for not raising this matter on appeal. Although the context suggests Morris was only asserting that trial counsel was ineffective for counsel's conduct with respect to the bench conferences and that appellate counsel was ineffective for not asserting trial counsel's ineffectiveness, the habeas court construed

Morris's petition as raising a claim that appellate counsel was ineffective for failing to raise a direct claim on appeal that Morris's right to be present was violated. The habeas court granted relief on all three grounds.[3] But as discussed above, the independent claim of trial counsel's ineffectiveness is barred. And the habeas court erred in concluding that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness or for failing to raise a direct claim regarding Morris's right to be present. We first address the direct claim.

(a) *Appellate counsel was not ineffective for failing to raise a claim on appeal that Morris's right to be present was violated.*

Morris asserted that he was excluded from several bench conferences during voir dire, and that this exclusion violated his right to be present under the United States and Georgia Constitutions. But the habeas court did not make any determination

---

[3] The habeas court noted that Morris was unclear as to whether appellate counsel was ineffective in failing to raise the right-to-be present claim "directly or through the lens of trial counsel's ineffectiveness," but believed the outcome was the same regardless.

as to the federal claim, granting relief only based on the right under the Georgia Constitution.[4] Our analysis here is limited to the state right; the federal claim remains pending for the habeas court to resolve on remand. See, e.g., *Turpin v. Lipham*, 270 Ga. 208, 220 (1998) ("Until there is a decision in the habeas court, [the unresolved issues] are not ripe for appeal.").

The Georgia Constitution provides that "[n]o person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII; see also *Ward v. State*, 288 Ga. 641, 645 (2011) (this paragraph embodies a "criminal defendant's right to be present and see and hear, all the proceedings which are had against him on the trial before the Court." (citations omitted)). Proceedings during which the jury is selected or changed

_____

[4] Although the habeas court mentioned the federal right, its analysis of harm was based on law regarding the violation of the state right, which differs materially from the analysis of harm for a violation of the federal right. See, e.g., *Peterson v. State*, 284 Ga. 275, 279 (2008) (noting that a critical difference between the federal right and the state right is that a violation of the federal right is subject to a harmless-error review while a violation of the state right is presumed to be prejudicial).

are a critical stage in which the defendant is entitled to be present. See *Ward*, 288 Ga. at 645; see also *Brewner v. State*, 302 Ga. 6, 10 (2017).

The right to be present can attach to some bench conferences, but not those "where the defendant's presence bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, and thus would be useless, or the benefit but a shadow." *Champ v. State*, 310 Ga. 832, 840 (2021) (quotation marks omitted). Such bench conferences to which the right does not apply generally "deal with questions of law involving essentially legal argument about which the defendant presumably has no knowledge, or with procedural or logistical matters." Id. (quotation marks omitted). Bench conferences at which a juror is discussed and dismissed, however, are proceedings to which the right to be present applies. See *Murphy v. State*, 299 Ga. 238, 240 (2016). If the right to be present attaches and a defendant has not waived it, any violation of the right is presumed prejudicial and requires a new trial. See *Champ*, 310 Ga. at 845 & n.10 (noting that Georgia is an outlier in

17

applying a conclusive presumption of harm to the violation of the constitutional right and this rule has not been consistently followed in our caselaw, as precedent traced to this Court's early years has applied harmless-error analysis).[5]

In setting out Morris's right-to-be present claim, the habeas court believed that the claim could not be resolved based on the trial record alone, relying on this Court's treatment of a similar claim raised by Morris's co-defendant in *Drennon*, 314 Ga. at 866–71. The voir dire was transcribed, but the individual bench conferences were not. In *Drennon*, we noted that although the defendant provided record cites to relevant portions of the voir dire transcript where bench conferences occurred, he made no effort to explain or contextualize any of the nine relevant bench conferences and provided no analysis as to how his right to be present was denied at

---

[5] In *Champ*, we outlined in some detail our inconsistent application of a conclusive presumption of harm. See 310 Ga. at 845, n.10. But whether to overrule cases applying that conclusive presumption was not argued or briefed in that case, and so the Court left that question for another day. See id. As in *Champ*, the parties here have not briefed the question, and so we again leave for another day whether to reconsider our precedent.

18

any of these nine conferences. 314 Ga. at 868. Despite these omissions, we conducted our own review of the record and remanded for further consideration based on our then-recent decision in *Champ* that required a remand when a defendant raised a right-to-be-present claim for the first time on appeal that could not be "easily rejected based on the existing record." Id. at 868–71 (quotation marks omitted).

Morris argued, and the habeas court agreed, that at the very least, if appellate counsel had raised the state law claim on direct appeal, Morris would have obtained a remand like his co-defendant did in *Drennon*. The habeas court found that this possibility was sufficient to establish appellate counsel's ineffectiveness. The habeas court also concluded that on remand, based on the testimony that had been developed in the habeas proceeding, there was a "(more than) reasonable probability that the trial court would have granted [ ] a new trial."

But our decision in *Drennon* is inapplicable here because that was a case on direct appeal. Because Morris raised the claim in a

19

habeas petition, it is controlled by our decision in *Griffin v. Terry*, 291 Ga. 326 (2012). There, the petitioner, exactly like Morris here, raised a habeas claim that his appellate counsel was ineffective for failing to raise a direct claim on appeal that his right to be present was violated. Id. at 326. We held that because the habeas petitioner was raising a claim of structural error in the context of an ineffective assistance of counsel claim, prejudice would not be presumed and the habeas petitioner had to establish actual prejudice. Id. at 328–29. And we held that to show actual prejudice to an appeal, the petitioner had to establish a reasonable probability that the result of his trial would have been different had his absence been prevented or corrected. Id. at 329. Because the petitioner in Griffin could not make this showing, his habeas claim failed. Id. at 329–30.[6]

---

[6] We express no opinion about whether *Griffin* was rightly decided. A panel of the United States Court of Appeals for the Eleventh Circuit held in an unpublished opinion, over a dissent, that *Griffin* was wrong to require a petitioner to show actual prejudice in order to establish appellate counsel's ineffectiveness in failing to raise a structural error claim on direct appeal. See *Hall v. Warden*, 686 FApp'x 671, 677–78 (11th Cir. 2017) (concluding that *Griffin*'s actual-prejudice standard was contrary to the United States Supreme Court's holding in *Smith v. Robbins*, 528 US 259 (2000)); see also *Hall*, 686 FApp'x at 685–89 (Tjoflat, J., dissenting) (concluding that *Robbins* was

Morris did not argue below, much less present any evidence in support, that the result of his trial would have been different had his absence been prevented or corrected. He does not show that a juror was improperly selected or rejected, or even if one had been, that there was a reasonable probability that the result of his trial would have been different. Therefore, this claim fails. See *Griffin*, 291 Ga. at 328–29 (concluding that petitioner failed to show that result of trial would have been different if his absence from juror colloquy had been prevented or corrected); cf. *Peterson*, 284 Ga. at 279 (deeming harmless any violation of the federal right to be present where, given the strength of the evidence, even if the defendant "had been present at the discussion with the juror, and even if he had somehow managed to convince the trial judge (on some basis not disclosed either to the trial court or to this Court) to

inapposite and noting precedent from the United States Supreme Court and the Eleventh Circuit that had required a showing of actual prejudice for claims of structural error that were procedurally defaulted or were raised in the context of ineffective assistance of counsel). Nevertheless, no party has asked us to revisit *Griffin*'s holding, which remains binding in Georgia courts until and unless we overrule it. We decline to reconsider that precedent sua sponte.

remove the juror and seat a replacement in his stead, the verdict would have been the same").

    (b)   *Appellate counsel was not ineffective for failing to raise a claim on appeal that trial counsel was ineffective for failing to include Morris in all substantive voir dire bench conferences.*

To prevail on a claim that his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness, Morris had to show that a claim about trial counsel's ineffectiveness would have prevailed on direct appeal. Although the violation of the Georgia right to be present is presumed prejudicial if raised as a direct claim, such a presumption does not apply to claims raised in the context of an ineffectiveness claim.

> Even if the law presumes prejudice for certain errors when they are timely raised, a convicted defendant who, like [Morris], is seeking to overcome a procedural bar, whether in conjunction with or separate from a claim of ineffective assistance of counsel, does not have the benefit of that presumption of prejudice, and must instead meet the actual prejudice test.

*Greer v. Thompson*, 281 Ga. 419, 421–22 (2006) (cleaned up)[7]; see

---

[7] There are exceptions to this rule: "(1) an actual or constructive denial

22

also *Hall*, 286 Ga. at 770 (habeas petitioner's claim did not fall within narrow range of cases in which a presumption of prejudice could be assumed in context of appellate counsel's failure to raise trial counsel's ineffectiveness); *Alexander v. State*, 313 Ga. 521, 530–32 (2022) (adhering to rule that a claim of structural error, although presumed prejudicial when raised as a direct claim, is not entitled to the same presumption when raised in the context of an ineffectiveness claim). Thus, to succeed on this claim, Morris had to show that he was actually prejudiced by trial counsel's failure to include him in all substantive bench conferences. See *Cartwright v. Caldwell*, 305 Ga. 371, 378 (2019) ("To determine prejudice involving a claim that appellate counsel provided ineffective assistance by failing to properly raise or prove a claim of ineffective assistance of trial counsel, the petitioner must demonstrate that the underlying ineffectiveness-of-trial-counsel claim would have had a

---

of counsel, (2) government interference with defense counsel, and (3) counsel [who] labors under an actual conflict of interest that adversely affects his performance." *Turpin v. Curtis*, 278 Ga. 698, 699 (2004) (alteration in original). None of these exceptions apply here.

23

reasonable probability of success.").

For the reasons discussed above, Morris cannot meet this standard. Therefore, this claim also fails.

4. *Appellate counsel was not ineffective for failing to allege on appeal that trial counsel was ineffective for failing to consult with or call a defense expert in cell tower analysis.*

As mentioned above, the State presented evidence showing that Morris's cell phone was at the scene of the crime. In particular, the State's expert testified that Morris's phone pinged off a cell phone tower close to Club 112 at 3:02 a.m., three minutes before officers were dispatched in response to Griffin's murder. In cross-examining the State's expert, trial counsel cited cell phone records showing that Morris made a phone call at 3:02 a.m., when he was apparently close to Club 112, and that his phone pinged at a tower located at 675 West Peachtree at 3:10 a.m., and got the State's expert to agree that it would have been difficult for Morris to make his way through the club and get to the new location on West Peachtree in eight minutes, demonstrating that it would have been difficult for Morris to have been the shooter. And in cross-examining

24

Detective David Quinn, trial counsel established that Morris was on his phone at 3:02 a.m. and 3:04 a.m. in the area of 1100 Peachtree and at 3:10 a.m. near 675 West Peachtree, providing additional evidence that it would not have been possible for Morris to be with the shooters at the club and get all the way down to West Peachtree in six minutes.[8] In closing argument, trial counsel emphasized that the State's timeline based on cell phone records did not work, and that those records showed that Morris "couldn't have been involved in this," because he could not have been doing "a bunch of stuff" in the club and still get to the next location at 3:10 a.m.

In support of his claim that trial counsel was ineffective for failing to consult or call as a witness an expert in cell tower analysis, Morris presented at the habeas hearing the testimony of Andrew Garrett, an expert in cell phone technology. Garrett generally

---

[8] The Warden also points out that trial counsel used the cross-examination of Detective Quinn to argue that a cell-phone call between Morris and Hargrove at 3:02 a.m. showed that the men were not together. Morris argues that there was no evidence showing who made these calls between the phones, and Detective Quinn said it would not be unusual for them to call each other even if they were near each other, which the prosecutor used to argue that the phone call was a "signal" to kill Griffin.

challenged the methodology and application the State's expert used to place Morris at the scene, specifically testifying that the State's expert's assertion that Morris had his phone in the area of the shooting at the time of Griffin's murder was not reliable. The habeas court found Garrett's testimony persuasive and held that the State's expert "misapplied the facts and data" of his cell phone analysis to Morris's case and held that trial counsel provided ineffective assistance by failing to call an expert. We disagree.

We need not detail all of Garrett's reasons for challenging the methodology and conclusion of the State's expert. Even if trial counsel's decision to cross-examine the State's expert rather than procuring his own expert was unreasonable, Morris cannot show that trial counsel's failure to consult with or call a defense expert like Garrett prejudiced him. Notably, the State's expert merely corroborated other evidence that had been presented at trial. Easterling testified that Morris was involved in planning Griffin's murder. Morris also told Easterling that he and others drove to Club 112 on the night of the murder and waited for Griffin to emerge, at

26

which point two of Morris's confederates — Hargrove and Collins — opened fire at Griffin. Morris told Easterling that Hargrove's gun jammed, so Collins shot and killed Griffin. Morris's former girlfriend told police that Morris had told her he had been present when Griffin was killed and that Hargrove had been the triggerman. The former girlfriend also testified that she also got rid of a gun for Morris by throwing it into the sewer. The gun was subsequently retrieved by police after the girlfriend directed them to the location.

The habeas court found prejudice because Morris's former girlfriend's testimony corroborating Easterling's testimony with respect to Griffin's murder was not credible and thus concluded that the testimony from the State's expert was the only credible evidence placing Morris at the scene. But that conclusion was clearly erroneous. Although the habeas court rightly noted that Easterling's testimony needed to be corroborated, Morris's former girlfriend amply corroborated Easterling's testimony with respect to Griffin's murder. See, e.g., *Crawford v. State*, 294 Ga. 898, 901 (2014) (an accomplice's testimony must be corroborated by slight independent

27

evidence corroborating both the identity of the defendant and the fact of his participation in the crime).

The habeas court discounted the testimony of Morris's former girlfriend as not amounting to credible evidence that he was present for the crime because she could not remember what she told police, she reported what she did because she was scared she might be prosecuted, and she recanted her statements during her trial testimony. As for the supposed recantation, the habeas court's citation of the record does not support its conclusion that the girlfriend recanted everything she said. Instead of saying that Hargrove shot Griffin as she reported to police, the former girlfriend clarified that Morris told her that Collins shot Griffin. More importantly, in clarifying her police report, she did not say that Morris did not tell her he was not present, only that he said he did not shoot Griffin. Moreover, although the girlfriend could not remember everything she said to the police, her statements to police were recorded and she did not refute the things she reported when she reviewed that recording.

28

Moreover, Easterling testified about the IRC's involvement, including Morris's, in other crimes. Specifically, Easterling described

> a September 2006 attack on, kidnapping of, and burglary of the home of victim Gary Lester. Lester, who had previously had dealings with Morris and other IRC associates, corroborated Easterling's account and identified Morris as a participant in his abduction.

*Morris*, 294 Ga. at 47.[9]

Because Easterling's testimony was corroborated in many respects by others, a reasonable jury would likely give his testimony considerable weight. As a result, because there was strong evidence placing Morris at the scene of the crime, as well as evidence that he planned the crime and travelled there with other gang members, one of whom shot Griffin, there is not a reasonable probability that the result of his trial would have been different had trial counsel consulted with or called an expert on cell tower technology. Thus, appellate counsel was not ineffective for failing to raise this claim of

---

[9] Although Morris was charged for offenses against Lester in the same indictment relating to the murder of Griffin, Morris was not tried for these offenses at the same trial.

29

ineffective assistance of trial counsel.

>  5. *Appellate counsel was not ineffective for failing to argue on appeal that trial counsel was ineffective for not interviewing or calling co-indictee Collins.*

The habeas court ruled that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness based on trial counsel's failure to investigate Collins and call him as a witness. We disagree.

At a pretrial hearing, the parties discussed the availability of Collins, whose trial was severed from the other defendants. The prosecutor represented that Collins was incarcerated in New Orleans. Counsel for co-defendant Drennon represented that she had been "down there" to see if Collins would testify and Collins's attorney would not "make [him] available to testify." In an affidavit submitted in support of Morris's habeas petition, Collins stated he shot Griffin, Morris was not present for the shooting, he was carrying Morris's cell phone at the time, that he had confessed to detectives prior to Morris's trial that he shot Griffin, and that he has "been and remain[ed] willing to testify" on Morris's behalf in support

30

of his habeas petition. The prosecutor stated in an affidavit that although Collins was actually brought to Georgia in hopes that he would testify against Morris, no agreement had been made in advance, and Collins was not called as a witness because he was unwilling to testify against Morris and the other co-defendants.

At the habeas hearing, trial counsel said that Morris informed him that Collins could be an exculpatory witness, providing evidence that Morris was not a participant in the actual shooting. Trial counsel said it was his understanding that Collins was in Louisiana facing "murder charges or something out there" and "they're not going to let him go." He said that the State never told him that Collins was in Georgia during the course of Morris's trial. He said that had he known Collins was in Georgia, he would have insisted that Collins be made available to testify, and that he should have subpoenaed Collins in any case.

This evidence falls short of establishing trial counsel's deficiency. At the time of Morris's trial, Drennon's counsel unequivocally said that Collins's counsel was not going to let him

31

testify. As a result, it is far from clear that any effort to subpoena Collins would have been fruitful. See *Dodd v. State*, 236 Ga. 572, 576 (1976) (trial court did not err in quashing a subpoena for the appearance of co-indictee who asserted his right against self-incrimination). Collins's affidavit does not provide evidence to the contrary. He merely stated that he was willing to testify at Morris's habeas proceeding, but he said nothing about testifying at Morris's trial. Although the State brought Collins in the hopes of testifying against Morris, Collins was unwilling to do so. That he refused to testify for the State does not establish that he would have been willing to testify at trial in support of Morris. To conclude otherwise is pure speculation. Morris's claim fails.

6. *Appellate counsel was not ineffective for failing to raise a claim that trial counsel was ineffective for withdrawing the motion for new trial without Morris's consent.*

Trial counsel testified at the habeas hearing that based on the trial court's rulings with other co-defendants, he did not want the motion for new trial to linger and wanted to proceed with the direct appeal. Trial counsel explained that he did not believe the trial court

32

would rule favorably on the motion for new trial but "was supremely confident" that Morris's convictions would get reversed on appeal. Although trial counsel informed Morris of the decision to withdraw the motion for new trial, stating that he wanted to "clear the way" for an appeal, he did not get Morris's consent. Morris testified at the habeas hearing that trial counsel never asked for his consent to withdraw the motion and was not told of the "pros and cons" of waiving the motion, stating that he did not understand what was going on. Morris did not, however, testify that he would not have given his consent had this been explained to him.

Even if trial counsel was deficient for failing to fully explain the consequences of withdrawing the motion and failing to get Morris's consent, Morris has not established prejudice from the withdrawal. Morris did not testify that he would have refused to give consent had he been adequately informed of the consequences of doing so. Compare *State v. Garland*, 298 Ga. 482, 485 (2016) (habeas petitioner established prejudice by testifying that he would not have consented to the withdrawal of his motion for new trial). Because

Morris cannot establish that trial counsel was ineffective for failing to obtain his consent in withdrawing the motion for new trial, his claim of appellate counsel ineffectiveness on this ground fails.

> 7. *Appellate counsel was not ineffective for failing to argue on appeal that this Court erred in denying counsel's motion to remand the case.*

The habeas court concluded that had appellate counsel enumerated as error this Court's denial of counsel's motion to remand, "the Court would have addressed the issue more thoroughly." But counsel's motion provided no compelling reason to remand, such as indicating that he wished to raise ineffectiveness claims on appeal or develop the record in other ways. It was hardly error to deny such a motion. Moreover, because we concluded above in rejecting the claim that appellate counsel was ineffective for failing to argue trial counsel was ineffective for withdrawing the motion for new trial, Morris similarly cannot show that he was prejudiced by not securing a remand to pursue that motion for new trial. Thus, this ground of ineffectiveness fails.

> 8. *Appellate counsel was not ineffective for failing to argue on*

34

*appeal that the evidence was insufficient to support Morris's convictions.*

Although appellate counsel did not argue on appeal that the evidence was insufficient, this Court nevertheless conducted a sua sponte review of the evidence, as had been our practice then, and concluded that the evidence was sufficient to support all of Morris's convictions. See *Morris*, 294 Ga. at 48. In concluding that we would have reached a different conclusion had the issue been raised by appellate counsel on appeal, the habeas court relied primarily on cell phone expert testimony developed at the habeas hearing. In other words, the habeas court relied on evidence not existing at the time of the appeal but on evidence that was produced *after* the appeal was decided. This is not how we conduct a sufficiency review. See, e.g., *Nazario v. State*, 293 Ga. 480, 488 (2013) ("[T]he reviewing court is limited to finding error, as in all cases, based on the record."); *Rymuza v. Rymuza*, 292 Ga. 98, 102 (2012) ("[A] reviewing court is limited to the record before it on appeal."). The habeas court also concluded that Easterling's accomplice testimony was not

sufficiently corroborated, but as explained above, the habeas court erred in reaching this conclusion. Morris cannot show that our prior conclusion on Morris's direct appeal was wrong, so he cannot show that appellate counsel was ineffective for failing to raise a sufficiency claim on direct appeal.

9. *Appellate counsel was not ineffective for failing to argue on appeal that the trial court erred in deciding not to bifurcate the gang activity count.*

Morris did not argue, and the habeas court did not find, that the gang activity count was "joined solely" on the ground that it was "of the same or similar character" as the other offenses, so he was not entitled to severance as a matter of right. See *White v. State*, 319 Ga. 367, 377 (2024) ("A defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges." (cleaned up)). Morris thus needed to show that a trial court abused its discretion in denying his motion to sever, but "'[t]ypically, a trial court does not abuse its discretion in denying a motion to sever where evidence of one charge would be

admissible in the trial of the other and there is no evidence that the joinder confused or misled the jury." Id. Morris has not made this showing.

Morris did not argue that the gang activity evidence "confused or misled the jury." And he did not argue that the evidence was not relevant. See *Campbell v. State*, 320 Ga. 333, 340–41 (2024) (evidence of gang activity was relevant to murder charge when it showed motivation for killing the victim). He argued only that the gang evidence was highly prejudicial. But for relevant and highly prejudicial evidence to be excluded, its probative value must be substantially outweighed by the danger of *unfair* prejudice. See *Wilson v. State*, 315 Ga. 728, 738 (2023) (citing OCGA § 24-4-403). Morris did not argue, much less show, that the relevant evidence was unfairly prejudicial or that this unfairly prejudicial effect substantially outweighed its probative value. In short, he made no showing that the gang activity evidence would not have been admissible in a severed trial. Thus, he failed to show that the trial court abused its discretion in denying his motion to sever. See, e.g.,

*Campbell*, 320 Ga. at 340–41 (trial court did not abuse its discretion in severing two murder counts where evidence of one murder would have established that it was committed in order to cover up crimes of the gang and evidence of the other murder would have established a motive for the crime); *McCabe v. State*, 319 Ga. 275, 287 (2024) (trial court did not abuse its discretion by denying the motion to sever when the challenged evidence "was a relevant part of explaining the plan and motive for his criminal conduct"). The claim of appellate counsel's ineffectiveness on this ground fails.

***

In sum, we reverse the habeas court's grant of relief to Morris. Morris's claims of ineffective assistance of trial counsel were procedurally defaulted, and he has not overcome this procedural default by showing that appellate counsel was ineffective for failing to raise these claims. Morris also has not established that appellate counsel was ineffective for failing to raise other claims directly. The habeas court made no ruling on whether appellate counsel was ineffective for failing to raise a claim that Morris's federal

38

constitutional right to be present was violated. Thus, we reverse in part and remand in part for that remaining claim to be addressed.

*Judgment reversed in part and case remanded in part. All the Justices concur.*